The State ex rel. Ewing v. Francis.

THE STATE *ex rel.* EWING, *Appellant,* v. FRANCIS.

1. **Constitution: CONTESTED ELECTION CASES: OPENING BALLOTS.** Ballots cast at an election cannot, under the constitution, article 8, sections 3 and 9, be opened and inspected, except in cases of con tested elections.

2. **Quo Warranto.** A *quo warranto* proceeding is not a contested election case within the meaning of the constitution, and ballots cannot be inspected therein.

3. ———. A *quo warranto* proceeding adjudges the right to the office to no one; it only determines whether the person exercising it is a usurper and ousts him if the judgment is in favor of the relator.

*Appeal from the Circuit Court of the City of St. Louis.* — HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*Dyer, Lee & Ellis, G. D. Reynolds* and *A. R. Taylor* for appellant.

(1) The act of March 27, 1883, is not limited in its operation to election contests under 2 Revised Statutes, chapter 101, but includes election contests where the remedy is by information in the nature of *quo warranto. Quo warranto* has been recognized by the Supreme Court of Missouri during all the time our statute has contained a provision for statutory contests as the most effectual, complete and comprehensive remedy in all cases of contested elections, especially for the great offices of the state. *State v. McBride,* 4 Mo. 303; *State v. Merry,* 3 Mo. 278; *St. Louis Co. v. Sparks,* 10 Mo. 118; *State, etc., v. King,* 17 Mo. 511; *State, etc., v. Ewing,* 17 Mo. 515; *State, etc., v. Scott,* 17 Mo. 521; *State, etc., v. Stone,* 25 Mo. 555; *State, etc., v. Lingo,* 26 Mo. 496.

*Quo warranto* is a civil remedy to try the title to an office. *State, etc., v. Stewart,* 32 Mo. 379 ; *State, etc., v. Lawrence,* 38 Mo. 535 ; *State, etc., v. Howard Co. Court,* 41 Mo. 246 ; *State, etc., v. Buskirk,* 43 Mo. 3 ; *State, etc., v. Kupferle,* 44 Ind. 155. *Quo warranto* is the proper remedy to determine contested elections. *State, etc., v. Ralls County Court,* 45 Mo. 58 ; *State, etc., v. Boal,* 46 Mo. 528 ; *State, etc., v. Vail,* 53 Mo. 97 ; *State, etc., v. Claggett,* 73 Mo. 388 ; *State, etc., v. John,* 81 Mo. 17. (2) Had the legislature intended to limit the application of the act of 1883 to the statute on the subject of election contests, the act would doubtless have been declared as amendatory of, or supplemental to, that statute—but there is no reference in the act of 1883 to the election statutes of the state. It stands independent and alone, and manifestly was intended to be as broad in its application as the constitutional mandate itself ; it is unlimited, disconnected with other statutes of the state, and is clearly intended to fully declare a remedy applicable to all cases within the purview of the constitution. *Humes v. R. R.,* 82 Mo. 227 ; *Neenan v. Smith,* 50 Mo. 526 ; *Connor v. R. R.,* 59 Mo. 293 ; *State v. Kinney,* 44 Mo. 283 ; *Frazier v. Gibson,* 7 Mo. 271 ; *Smith v. R. R.,* 61 Mo. 17 ; *Keferstein v. Senkton,* 52 Mo. 234 ; *Spitler v. Young,* 63 Mo. 43 ; *State ex rel. v. King,* 44 Mo. 283 ; *Ind., etc., v. Blackman,* 63 Ill. 117 ; *Smith v. People,* 47 N. Y. 330 ; *State v. Blair,* 32 Ind. 313 ; *Reynolds v. State,* 61 Ind. 393 ; *State, etc., v. Stewart,* 26 Ohio St. 216.

*James O. Broadhead, Leverett Bell* and *J. H. Overall* for respondent.

(1) The act of March 27, 1883 (Laws, 1883, p. 91), has no application to the present proceeding. That act is, by its terms and effect, limited to a case of contested

The State ex rel. Ewing v. Francis.

election, and contains no authority to open the ballot boxes in any other proceeding. (2) The legislature had not the power to extend the provisions of said act beyond a case of contested election. Const., art. 8, sec. 3. (3) A case of contested election is one in which a judgment can be rendered in favor of the contestor and against the contestee for the possession of the office. No such judgment can be rendered in a proceeding by a *quo warranto.* *State v. Vail*, 53 Mo. 111 ; *State v. Townsley*, 56 Mo. 107 ; R. S., sec. 3790, p. 646. (4) The provisions of the constitution of 1875 and the law of 1883 relate to contests between respective claimants to the particular office in question, and must be held to exclude, as between such claimants, all other remedies. The mode prescribed by the constitution does not mean a proceeding by *quo warranto,* or under the statute of *quo warranto.*

HENRY, C. J.—This is a proceeding in the nature of a *quo warranto*, commenced in the circuit court of the city of St. Louis. The petition avers that on Tuesday, seventh of April, 1885, an election was duly held in the city of St. Louis, for certain offices in and for said city, including that of mayor. That at said election, the relator and respondent were candidates for said office, and that relator then had, and now has, all the qualifications for said office prescribed by law. That he received a larger number of legal votes than were cast for respondent, or any other candidate, and was duly elected. That illegal and void ballots were counted for respondent, and were canvassed and counted as having been voted for respondent. The petition asked judgment of ouster against respondent and that relator be put in possession of said office.

The respondent pleaded to the information, denying all the averments as to illegal ballots, and denying that

relator received a greater number of votes than he. On a trial of said cause, proof was offered, showing that relator was qualified, as by law required, for the office, and asked for a writ directed to the recorder of voters for said city, to permit an inspection of the ballots in the ballot boxes, which was refused by the court, which then gave judgment against relator, and the cause is here on appeal.

The only question we have to determine is in relation to the action of the court in refusing the application for the writ to the recorder of voters.

The constitution, article 8, section 3, is as follows: "All elections by the people shall be by ballot; every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to disclose how any voter shall have voted, unless required to do so as witnesses in a judicial proceeding: *Provided, that in all cases of contested elections*, the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law."

"Sec. 9. The trial and determination of contested elections of all public offices, whether state, judicial, municipal or local, except Governor and Lieutenant-Governor, shall be by the courts of law, or by one or more of the judges thereof. The General Assembly shall, by general law, designate the court or judge by whom the several classes of election contests shall be tried, and regulate the manner of trial, and all matters incident thereto; *but no such law, assigning jurisdiction or regulating its exercise, shall apply to any contest arising out of any election held before said law shall take effect.*"

That the ballots can only be counted and compared with the list of votes, in cases of *contested elections*, we think, beyond question. The constitution prohibits an election officer from disclosing how any voter voted, unless required to testify as a witness in a judicial proceeding, and makes admissible secondary evidence of a fact, which is preserved in documentary form ; and provides, "that in all contested election cases" the ballots may be inspected, etc. ; but, even then, only under such safeguards as the legislature may prescribe. *Expressio unius est exclusio alterius.*

The question then arises, what is meant by the phrase, "contested elections," as employed in the above sections of the constitution ? Relator's contention is, that it relates to any proceeding in which the election of one holding an office is contested, while respondent insists that it relates only to statutory contests in which the contestant seeks not only to oust the intruder, but to have himself inducted into the office. The latter, we think, the correct view, and the sense in which the phrase is employed in section three is made manifest in section nine, which provides that the general assembly shall, by general law, designate the court, or judge, by whom the several classes of election contests shall be tried, and regulate the manner of trial, and all matters incident thereto. That the proviso in the third section of the constitution relates to the same contest mentioned in the ninth, there can be no question, and that it has no relation to *quo warranto* proceedings, we think, evident. A *quo warranto* proceeding in the circuit court is not an election contest, in the same sense in which those terms are used in the third and ninth sections of the constitution. That proceeding only determines that the person holding the office is or is not a usurper, but ousting him, if the court finds against him, it adjudges the right to the office to no one. This is clear from section

:3790, which declares what the judgment of the court, in such case, shall be, a judgment of ouster, and in favor of the relator for costs, if the finding be against the defendant, or if for defendant, that he shall recover his costs against the relator.

When the general assembly, in obedience to the constitutional mandate, designates, by general law, the court, or courts, or judge, by whom election contests shall be tried, and regulates the manner of trial, and all incidents thereto, from that moment the jurisdiction of courts, or judges, not thus designated, ceases, if they possessed it before, and the courts to which the jurisdiction is confided must exercise it as prescribed by law. The contested election cases in which the ballots may be inspected are those which the constitution requires the general assembly to designate the court or judge to try, and, therefore, no inspection can be had in any other case.

The concluding paragraph of section nine of the constitution, *supra*, is a provision to prevent the general law passed, assigning jurisdiction and regulating its exercise, from having a retrospective operation; but the proviso in section eight operates at once to preserve the inviolability of the ballot and prevent an inspection of ballots, until the enactment of a law prescribing when and how such inspection shall be had. But it is asked, has the constitution deprived the state of Missouri of the right to inspect the ballots, when she seeks to expel an intruder from office? Shall she not be permitted to have the ballots opened, when necessary to convict illegal voters? The constitution names one class of cases in which they may be inspected, and, unless the supposed cases belong to that class, the state has no more right than an individual suitor to an inspection of the ballots. She is as much bound by the constitution as any citizen, and if she has chosen, by her organic law,

to tie her hands in this matter, it is not in our power to release her from restrictions she has imposed upon herself.

The emergency requiring an immediate determination of this controversy, we have not had the time to elaborate the views herein expressed, which we would desire, but are entirely satisfied with the correctness of our conclusions. All concur, except Norton, J., absent.