THE STATE *ex rel.* KESHLEAR v. SLOVER, *Judge.*

In Banc, March 31, 1896.

1. **Jurisdiction:** JACKSON COUNTY CRIMINAL COURT: COUNTY MARSHAL: CONTESTED ELECTION: STATUTE. The language of the act of the legislature of February 1, 1871 (Laws, p. 87), that "all contested elections," for county marshal of Jackson county "shall be prosecuted before" the criminal court of said county is sufficient to confer jurisdiction on that court to hear and determine all contested elections for such office.

2. **Constitution:** STATUTE: TITLE. Said act of February 1, 1871 (Laws, p. 87), entitled "An act establishing the office of marshal of Jackson county, and defining his duties and powers," does not, by conferring jurisdiction on the criminal court of Jackson county, to hear and determine contested elections for such office, contravene article 4, section 32, of the constitution of 1865, providing that an act of the legislature shall not embrace a subject not expressed in its title.

3. **Contested Elections:** JURISDICTION: JACKSON COUNTY CRIMINAL COURT: STATUTE: REPEAL. Said act of February 1, 1871 (Laws, p. 87), was not repealed by Revised Statutes, 1889, section 4706, providing that "the several circuit courts shall have jurisdiction in cases of contested elections for county offices."

BARCLAY, SHERWOOD, and ROBINSON, JJ., dissenting.

*Prohibition.*

WRIT AWARDED.

*Elijah Robinson, Garner & Walsh,* and *Flournoy & Flournoy* for relator.

(1) The terms of the act of February 1, 1871, are sufficient to confer jurisdiction on the Jackson county criminal court to hear and determine contested

elections for the office of marshal of Jackson county. (2) Section 16 of said act is not in contravention of the provisions of section 32, article 5, of the constitution of 1865. *Lynch v. Murphy*, 119 Mo. 170; *State ex rel. v. Marion Co.*, 30 S. W. Rep. 103; *State ex rel. v. Bronson*, 115 Mo. 276; *State ex rel. v. Mead*, 71 Mo. 266. (3) Section 16 of said act of 1871 is repealed by section 4706, Revised Statutes, 1889. Repeals by implication are not favored and if a repeal can be accomplished by implication at all, it must be by necessary implication. Two statutes on the same subject should be so construed that both may stand if possible. *State v. Dailey*, 49 Mo. 184; *State ex rel. v. Walbridge*, 119 Mo. 389; *Manker v. Faulhaber*, 94 Mo. 439; *State ex rel. v. Slover*, 113 Mo. 202.

*Johnson & Lucas* for respondent.

(1) The act of 1871 is unconstitutional, being violative of section 32, article 5, of the constitution of 1865, providing that all subjects embraced within an act of the legislature shall be included within its title. *State ex rel. v. Johnson Co. Ct.*, 102 Mo. 537; *State v. Burgdoerfer*, 107 Mo. 19. (2) The terms of the act are not sufficient to confer jurisdiction on the Jackson county criminal court; it being a court of limited jurisdiction it can take nothing by way of implication. *State ex rel. v Hopkins*, 87 Mo. 523; *City v. Dasher*, 120 Mo. 681. The repeal of an act by a later one is largely a question of intention. *Railroad v. Cudmore*, 103 Mo. 634; *State v. Bennett*, 102 Mo. 356; *Railroad v. Shombaugh*, 106 Mo. 557. (3) At all events the act of 1871 was repealed by the constitution of 1875 (article 8, section 9), and the subsequent legislation thereunder. See *Francis v. Dillon*, 87 Mo. 487; *State ex rel. v. John*, 81 Mo. 17; *State ex rel. v. Mason*, 77 Mo. 191.

### DIVISION TWO.

GANTT, P J.—On the fifth day of June, 1895, the relator, J. B. Keshlear, filed his information for a writ of prohibition to prevent the respondent, who is one of the judges of the circuit court of Jackson county, from entertaining jurisdiction of a certain contested election case commenced by William M. Sloan against the relator in said circuit court for the office of marshal of Jackson county, Missouri.

From said information it appeared that at the general election held on the sixth day of November 1894, the relator received a majority of the votes cast for marshal of said county; that thereupon William M. Sloan began a contest against relator for said office before the circuit court of Jackson county, and said contest was then pending in said county before Judge Slover, as judge of said court, and said respondent was about to proceed to hear and determine said cause; that said court and Judge Slover as judge thereof had no jurisdiction of said contested election; that the jurisdiction to hear and determine contests affecting and concerning said office of marshal of Jackson county is vested in the criminal court of said Jackson county under and by virtue of an act of the legislature of the state of Missouri (Laws, 1871, p. 87), approved February 1, 1871, entitled, "County officers: Marshal of Jackson county. An act establishing the office of marshal or Jackson county, and defining his powers and duties;" that the jurisdiction of said court to hear and determine the contests for said office is exclusive of all other courts; that relator had moved said circuit court to dismiss said contest for the reason that it had no jurisdiction, but said court overruled his motion and is proceeding to assert jurisdiction thereof.

To this information the judge of the circuit court demurred for the reason that the information did not state facts sufficient to authorize the issuance of a writ of prohibition.

The issue is the jurisdiction of the circuit court of Jackson county to hear and determine the said contest. If the criminal court had and has exclusive jurisdiction then the writ must go, otherwise, not.

The respondent relies upon three propositions: *First.* That the act of February 1, 1871, establishing the office of marshal of Jackson county, did not confer upon the criminal court of Jackson county jurisdiction to hear and determine contested elections for said office. *Second.* That section 16 of said act is in contravention of the provisions of section 32, article 5, of the constitution of 1865. *Third.* That section 16 of said act is repealed by section 4706, Revised Statutes, 1889.

We will consider these in the order named.

I. As this whole controversy depends upon the construction of the act of February 1, 1871, Laws of Missouri, pages 87 and 88, and its constitutionality, the section of that act relating to the question now under discussion is here set out in full:

"Sec. 16. In all elections of marshal, when two or more persons shall have an equal number of votes and a higher number than any other person, the judge of the criminal court of Jackson county shall decide which of such persons shall have such office; all contested elections for such office shall be prosecuted and conducted before said court, as in cases of contested elections for the office of sheriff."

The first contention is that the language of section 16 does not confer jurisdiction on the criminal court; that being a court of limited jurisdiction, it can take no power by implication. To be more specific,

counsel argues both orally and in brief that the legis-
lature must needs have used some language expressly
granting jurisdiction to the criminal court; that it
should have said: "The criminal court of Jackson county
shall have jurisdiction to hear and determine *all* con-
tested elections for the office of marshal of said county."

We regard this contention as extremely hypercrit-
ical verbal criticism. There is no set form of words
required to confer jurisdiction. To hold that this act
was not a grant of jurisdiction because formal words
such as those above indicated were omitted would be
sacrificing substance to form.

The courts have held that in the absence of consti-
tutional requirement no particular form of words is
necessary. Our imperative duty is to ascertain, if pos-
sible, the intention of the legislature from the language
employed, and when we consider the clause "all con-
tested elections for said office shall be prosecuted and
conducted before said court," we have no doubt what-
ever that it was the intention of the legislature to con-
fer jurisdiction upon the criminial court of Jackson
county to hear and determine all contests for this par-
ticular office.

It was clearly competent for the legislature to create
the office of marshal of Jackson county, and to provide
a tribunal to hear and determine *all* contests therefor
and having done so in one and the same act the juris-
diction thus conferred is exclusive unless otherwise ex-
pressed or plainly manifested.

"Where by a statute a new right is given and a
specific remedy provided, or a new power and also the
means of executing it are provided by statute, the
power can be executed and the right vindicated in no
other way than that prescribed by the statute." Sedg-
wick, Const. Stat. & Cons. Law, 343.

This rule in no sense conflicts with the well defined

doctrine that the jurisdiction of a court of equity is not impaired by a statute conferring a jurisdiction upon other courts which has previously been exclusively equitable, unless the statute expressly takes away the jurisdiction from the chancery courts. *Brandon v. Carter*, 119 Mo. 572. Nor does it collide with that other general principle stated by Sedgwick in these words: "If a statute gives a remedy in the affirmative, without a negative expressed or implied, for a matter which was actionable at the common law, the party may sue at the common law as well as upon the statute; for this does not take away the common law remedy." Sedgwick, Const. Stat. & Cons. Law, 342; *State v. Bittinger*, 55 Mo. 596.

A contested election is a purely statutory proceeding in Missouri, both as to the tribunal and the character of the proceeding, and was unknown at common law. As to this point our conclusion is that the language of the act was amply sufficient to confer jurisdiction upon the criminal court of Jackson county to hear and determine said contest.

II. But, notwithstanding the grant of jurisdiction is plain enough, section 16 of the act of 1871 may still be inoperative as a law if it contravened the constitution when it was enacted, as is charged by the respondent's counsel.

Section 32 of article 4, of the constitution of 1865, in force when this act was passed, is as follows: "No law enacted by the general assembly shall relate to more than one subject, and *that shall be expressed in the title;* but if any subject embraced in an act be not expressed in the title, such act shall be void only as to so much thereof as is not so expressed."

The contention here briefly stated is that the title to this act of 1871, which is in these words, "County Officers: Marshal of Jackson County. An act establishing the office of marshal of Jackson county, and defin-

ing his powers and duties," does not indicate an inten-
tion to confer jurisdiction upon any court to decide a
contested election for said office, and hence said section
is not a valid enactment.

This provision of the constitution is mandatory,
and was designed to correct a vicious system which then
prevailed in legislative bodies which often resulted in
laws productive of fraud and plunder, of which the
legislature had no notice until too late to remedy the
wrong. This section has often been construed by this
court, and it has been uniformly ruled that it should be
given a liberal construction, "so as not to limit or crip-
ple legislative enactments any further than what was
necessary by the absolute requirements of the law."
*State v. Miller*, 45 Mo. 495.

The general spirit of the cases is well illustrated by
SHERWOOD, J., in *State v. Blackstone*, 115 Mo. 427,
when he says: "The constitution does not require that
the title of an act should descend to minute detail and
thus anticipate the body of the act; it is sufficient if the
title be so comprehensive as to embrace all matters in-
cident and germane to the one subject which the bill
contains." A similar construction was put upon this
section of the constitution in *Lynch v. Murphy*, 119
Mo. 170; *State v. Bennett*, 102 Mo. 364; *State ex rel. v.
Bronson*, 115 Mo. 276; *Ewing v. Hoblitzelle*, 85 Mo. 70,
and very recently in *State ex rel. v. Marion County
Court*, 128 Mo. 427.

But perhaps the case most similar to this in its gen-
eral features is *State ex rel. v. Mead*, 71 Mo. 266. In
that case the question was whether the law under which
the respondent therein, one Mead, claimed his appoint-
ment as recorder of deeds of Livingston county had
been repealed by an act which went into effect on the
first day of November, 1879. The previous law and the
one under which he was appointed, vested the appoint-

ing power in the county court—the latter act placed the appointment in the governor. The old law was section 28, page 162, General Statutes, 1865. The title to the act which it was claimed repealed that section was in these words: "An act to amend and revise chapter 2, title 2, of the General Statutes of Missouri concerning popular elections," and it was challenged as violating section 28, article 4, constitution 1875. In that case it was said by Judge SHERWOOD, all the court concurring: "The principle to be readily deduced from these cases and the authorities cited is, that if any matter contained in a statute be objected to, *as not referred to in the title*, or that the bill contains more than one subject, the objection urged will not be held well taken, if the clause or section to which objection is raised *be germane* to the subject treated of in the title." And he adds: "Applying this recognized principle in the present instance, section 5527, *supra*, will be found in entire harmony with it, for there is an obvious connection and congruity between the idea expressed in the title, 'concerning popular elections,' and that of providing for filling, by gubernatorial appointment, vacancies temporarily occurring in offices filled, in the first instance, by the ordinary machinery of an election, and to be so filled again when the temporary exigency which occasions the temporary appointment has, with the cause in which it had its origin, ceased to exist."

Now the act of February 1, 1871, had the single comprehensive title of, "An act establishing the office of marshal of Jackson county, and defining his powers and duties." At once the suggestion comes as to the method of electing or appointing the incumbent, the length of his term, the salary or perquisites, the filling of the vacancy in case of death or resignation, and nothing could be more natural than to look to the body

VOL. 134 mo—2

of the act to ascertain what provision had been made to insure the orderly succession in the incumbency of the office, and to provide for settling the dispute of rival claimants thereto. Certainly such a provision as is found in section 16 would be germane to the subject and would have an obvious connection with it. Indeed we may remark that in the then prevailing system of providing specially for contesting elections, had the legislature not have provided the right of contest for this office, and designated the tribunal, it might have been considered *casus omissus*.

We hold the act of 1871 and section 16 thereof were constitutional. The decisions in *State ex rel. v. Jackson County Court*, 102 Mo. 537, and *State v. Burgdoerfer*, 107 Mo. 19, are in nowise in conflict with the view herein expressed.

III. But respondent's counsel insist that although the act of 1871 may have conferred jurisdiction on the criminal court of Jackson county to hear and determine contested elections for the office of marshal of said county, and although said act be not unconstitutional, still, said criminal court has no jurisdiction of said contest and the circuit court of Jackson county has jurisdiction to hear and determine said contest, because the act of 1871 was repealed by section 4706, Revised Statutes, 1889.

This contention is based upon section 9, of article 8 of the constitution of 1875, which ordains that ''the trial and determination of contested elections of all public officers, whether state, judicial, municipal, or local, except governor and lieutenant-governor, shall be by the courts of law, or by one or more of the judges thereof. The general assembly shall, by general law, designate the court or judge by whom the several classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto; but no such law,

assigning jurisdiction or regulating its exercise, shall apply to any contest arising out of any election held before said law shall take effect."

Section 4706 provides that, "the several circuit courts shall have jurisdiction in cases of contested elections for county offices, and the county courts in contests of township offices; but no election of any county or township officers shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted," etc.

A satisfactory determination of the point in dispute will be best attained by considering the effect of section 4706 from different points of view.

Proceeding upon ascertained legal principles it will be noticed that the act of 1871 establishing the office of marshal has not been expressly repealed by the sections cited. That act is not referred to in direct terms, neither is there a general clause repealing "any and all acts inconsistent therewith."

It becomes then a question of repeal by implication alone. It is now axiomatic that a repeal of this nature is not favored, and the settled rule of construction in this state is that the prior law is to be upheld if the two acts can subsist together. The decisions in *Manker v. Faulhaber*, 94 Mo. 430, and *State ex rel. v. Walbridge*, 119 Mo. 383, have so fully covered this ground that no other reference to decided cases is necessary.

The two laws must be irreconcilably inconsistent, and it has been said this construction is peculiarly applicable when the prior enactment is a *special* law and the latter a *general* one. These canons of construction are so familiar and of such universal application with us that it must be presumed that laws are framed and passed with reference to them.

The express purpose of the constitutional provision was to insure the trial of contested elections of all public officers whether state, judicial, municipal, or local in the courts of law. Prior thereto under various municipal charters contests were heard and determined by the mayor and aldermen and it was deemed best to remove such contests from the domain of politics and guarantee a determination according to the laws of the land.

But that provision of the constitution was not repugnant to the sixteenth section of the act of 1871, because that section itself provided for the hearing of the contest for *marshal in a court of law*, "the criminal court of Jackson county." If section 9 of article 8 contained no more than its first clause we should deem further discussion entirely superfluous, because the special act and the constitution are harmonious both in letter and spirit.

The most plausible part of respondent's argument is that, as the constitution of 1875 required the legislature by general law to designate the courts before whom the several classes of contests should be heard, it must be presumed that the legislature intended to repeal the act of 1871 by adopting section 4706.

It is conceded that the constitution did not repeal the act of 1871, but confided the subject to the wisdom of the legislature as to classification and the courts of law in which said contests should be heard. The provision for a general law was not intended to repeal special local acts then in existence. Unquestionably it was and is the design of the constitution to rid the state of the evil of a multitude of special and local laws and to adopt general laws whenever it is feasible, but general subsequent laws have not heretofore been construed as repealing the various special laws and charters

of this state unless appropriate language has been used for that purpose.

Section 4706, Revised Statutes, 1889, does not require *all* contested elections for county officers to be in the circuit courts. It does not vest the circuit court with *exclusive* jurisdiction in *all* cases of contested elections for county officers, but simply provides that "the several circuit courts shall have jurisdiction in cases of contested elections for county offices." Certainly there is ample scope for this law without repealing a specific, local, special law as to one county officer in Jackson county.

Granting this language is broad enough to have repealed a general provision on the subject or that in the absence of the special act its terms are broad enough to include a contested election for marshal, yet there is no irreconcilable conflict between this subsequent general law and the prior special act which had reference to a special locality and a particular office which existed *in no other county* in the state. And when we look into the two laws we find nothing incongruous.

In other counties the circuit courts are endowed with jurisdiction to hear and determine the contests for their ministerial officers. Those courts have both civil and criminal jurisdiction, but when the legislature came to consider Jackson county and the repeal of the act of 1871, it might well have been impressed with the fact that the criminal court of Jackson county had shorn the circuit court of its criminal jurisdiction, and the executive officer of that court was not an officer of the circuit court, and did not bear the same relation thereto that the sheriffs of other counties bore to the circuit courts, namely, that of immediate executive officers of said courts, and the legislature might well have deemed that it was eminently proper that the court, whose process he was to serve and whose sittings he was to

attend, should have the jurisdiction to hear contests for said office; especially as that court was *a court of law*, and had all the criminal jurisdiction formerly possessed by the circuit court.

The legislature was required to revise, digest, and promulgate all the statute laws of the state of a general nature, both civil and criminal. Sec. 41, art. 4, Const. of 1875. But in so doing there was no duty placed upon it to repeal all the special local laws of the state irrespective of their adaptability to the communities for which they had been framed prior to the adoption of the constitution.

By section 3159, of Revised Statutes, 1879, "all acts and parts of acts of a private, local, or temporary nature, or specially applicable to particular cities or counties" (except St. Louis), "shall not be published in the revised statutes; but all such acts and provisions now in force or passed at the present session *and not expressly repealed by or repugnant to the provisions of the revised statutes*, shall continue in force or expire according to their respective provisions or limitations."

From the failure to use any express words of repeal, of this special act, and from the fact that there is no conflict in the general provision of section 4706 with the act of 1871, we feel bound to presume there was no intention to repeal the act of 1871. There was neither the *express repeal*, nor any such repugnancy as calls for a repeal by implication.

But it is urged that we are bound by previous decisions of this court to hold that this section 4706 repealed the act of 1871, and we are cited to the case of *State ex rel. v. Francis*, 88 Mo. 557.

That was a proceeding by *quo warranto* to determine the mayoralty of St. Louis. Relator pleaded that he had received the majority of the votes cast and

was elected; that void and illegal ballots had been cast for his opponent, the respondent, and counted for him, and he prayed ouster. Respondent denied all averments of illegal ballots. On the trial proof was offered showing relator was qualified, and he asked for a writ directed to the recorder of voters of said city for an inspection of the ballots, in the ballot boxes, which was refused by the court, which then gave respondent therein judgment, and relator appealed. The learned judge who wrote the opinion says, "the only question we have to determine is in relation to the action of the court in refusing the application for the writ to the recorder of voters." It was held that a *quo warranto* was not a *contested election within the meaning of our constitution, and that the right to open the ballot boxes only existed in a contested election.* It is apparent there was no question as to *what courts* had jurisdiction of contested elections, but simply whether in a *quo warranto* proceeding the ballot boxes could be opened, and although the learned judge used the general language attributed to him in the brief, it is perfectly apparent that it was entirely *obiter*, not a matter for decision in that case, and certainly was in no sense a discussion of this *section 4706*, whatever force be attributed to the statement.

The other cases holding that the municipal officers of a city were not included in *"county officers,"* and therefore section 4706 did not apply to them, are foreign to the discussion in hand, and in no way conflict with the conclusion we have reached that the act of 1871 is still a valid subsisting law, and confers exclusive jurisdiction upon the criminal court of Jackson county to hear and determine the contest for marshal of Jackson county, and that the circuit court of that county has no jurisdiction to hear the same.

It necessarily results that the writ of prohibition must issue as prayed for by relator, and it is accordingly so ordered. SHERWOOD and BURGESS, JJ., concur.

### IN BANC.

PER CURIAM.—The foregoing opinion handed down in division number two is adopted as the opinion of the court *in banc*, BRACE, C. J., MACFARLANE and BURGESS, JJ., concurring with GANTT, P. J., therein. BARCLAY, SHERWOOD, and ROBINSON, JJ., dissenting. Writ of prohibition will therefore issue as therein directed.

BARCLAY, J. (*dissenting*).—The demand for a writ of prohibition is based on the theory that the local act of 1871, "establishing the office of marshal of Jackson county," etc., excludes the jurisdiction of the circuit court in a statutory contest for the said office.

The plaintiff's case depends on the force possessed by the following provision of the sixteenth section of that act: "All contested elections for such office shall be prosecuted and conducted before said court" (namely, the criminal court) "as in cases of contested elections for the office of sheriff."

Plaintiff claims that, because the act of 1871 is local, it continues in force notwithstanding the later general law contained in section 4706 (R. S. 1889), first enacted in 1879 as section 5528 of the revision of that year. Plaintiff construes the words "all contested elections," etc., in the marshal's act, as conferring an exclusive jurisdiction on the criminal court of Jackson county.

Whether or not a general law repeals by implication an earlier special or local law touching the same topic is a question to be determined on ascertaining the intent of the legislation. *Nusser v. Com.* (1855)

25 Pa. St. 126; *State ex rel. v. Butcher* (1894) 93 Tenn. 679 (28 S. W. Rep. 296); *Bogardus v. Gordon* (1894) N. J. Eq. (30 Atl. Rep. 812). That intent is to be gathered from a variety of indications.

A number of rules of interpretation, sanctioned by experience, point out the relative values of these indications. But if the interpreter becomes satisfied, from a careful view of the laws, and of the history of the subject, that the general law was designed to supplant the local law, that result may properly be declared, as it has often been declared in this state and elsewhere. 23 Am. and Eng. Ency. of L. 426.

It appears from a mass of local laws, in force at various periods prior to the constitution of 1875, that it was a common practice, during that epoch of our state's history, to make special provisions for contesting elections for offices.

We shall not attempt to give any extended list of statutes of that sort. Sufficient time is not at our command at present to permit a full examination of the session acts for that purpose. But a cursory glance at the small volume of annual laws (1871) in which appears the marshal's act of 1871, discovers several illustrations of that sort of legislation.

See provisions for contest of election of judge of the criminal court of Jackson county (Laws, 1871, p. 111, sec. 7); of probate judge of Bates county (Laws, 1871, p. 113, sec. 4); of a like office in Saline (Laws, 1871, p. 121, sec. 4); and for recorder of Canton (Laws, 1871, p. 140, art. 3, sec. 3).

A similar glance at the laws in force at times prior to 1875 will show how great a number of offices, large and small, were the objects of special provisions in regard to contests in those days. We cite but a few examples, readily found.

*Some local laws on contests.*

Probate judge, Adair county, Laws, 1847, p. 38, sec. 1.

Probate judge, Henry county, Laws, 1848–9, p. 439, sec. 4.

Probate judge, Linn county, Laws, 1852, p. 391, sec. 5.

Judge, Common Pleas, Louisiana, Laws, 1852, p. 85, sec. 6.

Judge, Common Pleas, Jackson county, Laws, 1855–6, p. 61, sec. 6.

Probate judge, Platte county, Laws, 1855–6, p. 91, sec. 5.

Probate judge, Clay county, Laws, 1858–9, p. 326, sec. 5.

Judge, clerk and prosecuting attorney, Court Criminal Correction. R. S. 1865, p. 78, sec. 4.

Probate judge, St. Louis, R. S. 1865, p. 70, sec. 85.

Judge, Common Pleas, Johnson county, Laws, 1867, p. 90, sec. 6.

Probate judge, Pettis county, Laws, 1873, p. 181, sec. 3.

Probate judge, Scott county, Laws, 1873, p. 187, sec. 4.

Judge, Common Pleas, Barry county, Laws, 1874, p. 246, sec. 18.

Probate judge, Dallas county, Laws, 1874, p. 280, sec. 3.

Many of these laws are, no doubt, obsolete, but they serve to illustrate the method of dealing with the subject in hand at the dates indicated by the citations.

The constitution of 1875 had something to say on this topic:—

"The trial and determination of contested elections of all public officers, whether State, judicial, municipal or local, except Governor and Lieutenant-

Governor, shall be by the courts of law, or by one or more of the judges thereof. The General Assembly shall, by general law, designate the court or judge by whom the several classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto; but no such law, assigning jurisdiction or regulating its exercise, shall apply to any contest arising out of any election held before said law shall take effect." (Art. 8, sec. 9, const. 1875.)

With a knowledge of the state of the law disclosed by the statutes above cited, it is not hard to divine the object of the section of the organic law of 1875, just quoted. Plainly, it was to bring the practice in election contests into some sort of order; and, by establishing one harmonious system of procedure in the courts, to subject those controversies to the control of the universal rules and principles of law.

Section 4706 is a general law, enacted at the first revision of the statutes after the adoption of the constitution of 1875, and in compliance with its command. If it is not effective to confer jurisdiction on the circuit court of Jackson county in the contest here in view (because of the prior local law of 1871) then it is likewise ineffectual to confer jurisdiction on the circuit courts throughout the state in every case where some old local law can be resurrected, which makes a different special provision for contesting some particular county office in dispute.

The very object of the constitutional command aforesaid was to obtain a general enactment which would get rid of the confusion and uncertainty in the law of contests caused by the multitude of local provisions governing them. Much good can that proposed reform now accomplish, when we find it held (as in this case) that the general law, passed in deference to the mandate of the people, is nevertheless inoperative

to repeal the local and special laws on the subject it purports to cover!!

. The obvious purpose of the constitution in taking up such a subject adds additional force to the rule stated by Judge ENDLICH as follows: "An intention to supersede local and special acts may"   *   *   * "be gathered from the design of an act to regulate, by one general system or provision, the entire subject-matter thereof, and to substitute for a number of detached and varying enactments, one universal and uniform rule applicable throughout the state.   Accordingly, it has been held that statutes fixing the terms of officers in certain counties are to be deemed repealed, by implication, by a general statute fixing the terms of office of that class of officers throughout the state."   Endlich, Interp., sec. 231.

This rule has often been announced and applied in Missouri in cases where the intent to supersede some local, by a general, law was not so plain as it is in section 4706 and the accompanying sections on election contests, in view of the history of the law of the subject in this state.   *Smith v. State* (1851) 14 Mo. 147; *State ex rel. v. Pearcy* (1869) 44 Mo. 159; *Pool v. Brown* (1889) 98 Mo. 675 (11 S. W. Rep. 743).

Section 4706 of 1889, when it first appeared as section 5528 of the revision of 1879, had an annotation to indicate that it was an amendment of section 47 of the general statutes of 1865, page 66.   The section (5529) next to it in the revision of 1879 is a copy of section 53 (same page) of the statutes of 1865.   A comparison of section 5528 (of 1879) with sections 47, 49, 50, 51, and 52 of the statutes of 1865 (page 66) will satisfy any reader that the revisors of 1879 intended to substitute the new section (5528) for both sections 47 and 50 of the general statutes of 1865 (page 66).   One of those sections, thus taken out of the chapter, established a

jurisdiction for the trial of contests for county offices, but it added, "unless the decision of such contest be otherwise provided for by law." G. S. 1865, p. 66, sec. 50. The omission to carry any such provision, as to those contests, into the new law of 1879 and the grant, at the same time, of general jurisdiction to the circuit court to try them are very significant pointers to the intention of the legislature as to the scope and purpose of section 5528 (of 1879). They seem to us manifestations of intent to repeal the many local provisions on this subject, scattered broadcast through the Missouri laws prior to the constitution of 1875.

The new section, replacing section 50 (page 66) of the statutes of 1865, undertook to confer (though our learned colleagues hold that it did not quite confer) jurisdiction on the circuit court "in cases of contested elections for county officers," without the old saving clause as to cases "otherwise provided for by law." We are of opinion that that grant of jurisdiction should be construed to mean exactly what it says and nothing less. The legislature wished, we think, to obey the constitution. That body was certainly under a duty to pass a law on the subject of contests which would in reality be a "general law." According to our learned associates, that duty has not been performed; but, instead, the legislature has merely passed a law applying to cases where no prior local provision on the subject existed, just as if the quotation above, from section 50 of the statutes of 1865 (page 66), was still in force. That ruling will probably surprise no one more than the members of the general assembly, who in 1879 passed section 5528 (now section 4706). Had they intended such a result as is declared in this case, they would have used some language similar to that adopted in dealing with the topic of tie votes, as to which they were under no constitutional order to enact a uniform

or general law.   They accordingly re-enacted the old law governing that subject, declaring that "if there be a tie in the votes given for any two of the candidates, except in cases otherwise provided by law, the clerk or justices"   *   *   *   "shall issue their order," etc., for a new election.   R. S. 1879, sec. 5526, same as sec. 4704 of 1889.

That enactment indicates that the legislature did not design to then repeal existing local laws regarding tie votes.

The section quoted appears in close juxtaposition to the section regulating contests for county officers, etc., which makes no such exception.   Why did it not? Because, doubtless, those who drafted section 5528 in 1879 considered that they were called upon by the constitution to "designate the court or judge by whom the several classes of election contests shall be tried, and regulate the manner of trial," *"by general law."* They probably imagined that they had done this.

If there is any uncertainty, however, as to what the legislature intended, should we not rather adopt the view that they have done what they were directed to do—in other words that they have performed their duty under the constitution ?   *McCleary v. Allegheny County* (1894) 163 Pa. 578 (30 Atl. Rep. 120).

A due consideration of the old law and of the evils of the local enactments which evoked the demand in the constitution for a "general law," of the kind therein defined, greatly strengthens the natural inference that the law of 1879 was designed and intended to repeal every such local law as is here in question.   This intent seems too plain to need any reference to section 3160 (R. S. 1879) which laid down a general rule for the construction of revising statutes—a rule which, however, fortifies the conclusion we reach as to the

meaning and effect of the general law of 1879 now in question.

To us it appears clear (both from what was enacted, and from what of the old law was excluded, in 1879, in the revision of the statutes concerning contests for county offices) that the revising legislature intended section 5528 to give the circuit courts jurisdiction over those contests, despite any prior local statutes to the contrary.

But if that intent is doubtful, it seems to us (with all due respect) that the doubt should be resolved in favor of the jurisdiction of the circuit court, before which the contest is pending.

In *State ex rel. v. Fitzgerald* (1869) 44 Mo. 425, the supreme court said: "If, on a comparison of the enactment in question, and a consideration of the nature of the office, the jurisdiction of the court should still be deemed not free from doubt, that doubt should be resolved in support of the jurisdiction, in accordance with the maxim that remedies should be amplified in the advancement of substantial justice."

As we are satisfied that the circuit court has jurisdiction, under the general law, over the contest for marshal, we deem it unnecessary to consider the bearing of the act of 1879, re-organizing the circuit court of Jackson county, which provided for divisions of that court, and declared that *"from and after that date"* (Dec. 31, 1880) *"there shall not be in said county any other court of record having civil jurisdiction, except a probate and a county court"* (Laws, 1879, p. 80, sec. 1).

In our opinion the learned circuit judge, defendant, committed no error in refusing to dismiss the contest. The application for a writ of prohibition against him should be refused, and we dissent from the judgment awarding the writ. Judges SHERWOOD and ROBINSON concur in this opinion.