THE STATE ex rel. JAMES D. RAINWATER, Appellant, v. J. C. ROSS et al., Judges of County Court.

**In Banc, July 2, 1912.**

1. **LOCAL OPTION LAW: Title: Election Contest: Amendment of 1909.** The title to the Local Option Act of 1887, which was: "An act to provide for the preventing of the evils of intemperance by local option in any county in this State, and in cities of twenty-five hundred inhabitants or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city; to provide penalties for its violation, and for other purposes," is sufficient to uphold section 7242 of the act, declaring that "the election in this act provided for, and the result thereof, may be contested in the same manner as is now provided by law for the contest of county officers," and to contemplate the Amendment of 1909 to said section 7242, declaring that said election contest could be brought "by any qualified voter of the municipal body or of the county in which said local option election shall be held by an action to contest as herein provided, and which shall be brought against the municipal body or county holding said election." The title purports to cover the subject of an election for the purpose of prohibiting the sale of intoxicating liquors, and the provision in the body of the act for the contest of an election so held is clearly germane and directly connected with the subject expressed in the title.
   *Held*, by GRAVES, J., that the Constitution only speaks of contests for office and not contests of elections upon public questions; and it is a question whether there is any constitutional warrant for said Amendment of 1909.

State ex rel. v. Ross.

2. ———: **Election: Validity Contested by Mandamus.** Where the only ground upon which relator was refused a dramshop license was that the Local Option Law had been adopted in the county, his remedy to contest the validity of that election is not the writ of mandamus to compel the county court to issue him a license. Since section 7242 of the act and the amendment thereof in 1909 provide that a local option election may be contested, "in the same manner as is now provided by law for the contest of the election of county officers," and as that is an adequate remedy, relief by mandamus must be denied.

3. ———: ———: ———: **Statutory Remedy Exclusive.** It is within the power of the Legislature to designate the tribunal, the parties and the procedure for the contest of an election; and when it does so, the statutory remedy is exclusive, since the right to contest an election did not exist at common law. And when the General Assembly provided that a local option election may be contested in the same way in which, under the general election statutes, an election to a county office may be contested, it provided a complete and adequate remedy for any qualified citizen of the city or county to contest the validity of an election at which the county court has declared the Local Option Law was or was not adopted, by giving notice within twenty days after the votes shall have been officially counted, etc.

*Held*, by GRAVES, J., dissenting, that the statutory method is not exclusive, but only cumulative; *second*, that the general election laws are not available for declaring invalid a whole election, but a contest for office, for which they provide, necessarily admits that a valid election has been held; and, *third*, many defects may arise in a local option election, such as a valid petition or a requisite notice or a proper count, for the investigation of which the general election laws make no provision, and therefore the statutory method of contesting the validity of such an election is not an adequate remedy in all cases.

Appeal from Jasper Circuit Court.—*Hon. B. G. Thurman* and *Hon. J. D. Perkins*, Judges.

AFFIRMED.

*A. L. Thomas* and *McReynolds & Halliburton* for appellant.

(1) These provisions of the statute are mandatory. Ballots without numbers were counted in the Fifth ward, and the ballots in the Fifth ward were not sealed up in a package, but were returned loose on a

string in an unfastened box, and should not have been counted. West v. Ross, 53 Mo. 350; Ledbetter v. Hull, 62 Mo. 422; Donald v. Lee, 101 Mo. App. 191; McKay v. Minor, 154 Mo. 608. (2) The admission in evidence of the news report in the "Press" of the action of the council ordering election to be held at certain places in the various wards was error. Southworth v. Mayor, 232 Mo. 108, where the court says: "If statutory notice of election is insufficient the election must fail." McPike v. Pen, 51 Mo. 63. (3) The law governing special elections must be strictly followed. And there must be reasonable notice of time and polling places, and where the time and place is to be designated by some board, then notice of time and place must be given by such board. Haddox v. County, 79 Va. 677; Morgan v. Gloucester, 44 N. J. L. 137; People v. Weller, 11 Cal. 49; George v. Township, 16 Kan. 88; Stephens v. People, 89 Ill. 337; Westbrook v. Rosebrough, 14 Cal. 180. (4) The election should be held void for the reason that the uncontroverted evidence in the case shows that open and flagrant bribery was resorted to in at least four of the five voting precincts in the city of Carthage. When fraudulent and corrupt methods in the holding of an election are shown to have been resorted to in any precinct the burden is then cast on those asserting the validity of the election to show that the election was not improperly affected by said means. Littlefield ex rel. v. Newell, 27 Atl. 156; State ex rel. v. County, 35 Kan. 640; State v. Marston, 6 Kan. 538; Russell v. State, 11 Kan. 322; State v. Stephens, 23 Kan. 456; Patten v. Coats, 41 Ark. 111; Thompson v. Ewing, 1 Brewster, 67; Wallace v. Simpson, 4 Brewster, 457; People v. Thacher, 55 N. Y. 525; Howard v. Cooper, Contested Elections in Congress, 1834, 1865, p. 275; Blair v. Barrett, Contested Elections in Congress, p. 308; Reed v. Julian, Contested Elections in Congress, p. 821; McCrary on Elections, Sec. 436, *et seq.*

*W. N. Andrews, H. F. Walden* and *Shannon &
Phelps* for respondents.

(1) An election contest is the exclusive remedy
to determine the validity of a local option election
held for the purpose of adopting Art. 3, Ch. 63, R. S.
1909. Opinion of NIXON, P. J., in State ex rel. v. Ross,
143 S. W. 511. (2) In determining that the Local
Option Law was in force in Carthage, the county court
of Jasper county acted judicially, and its judgment
is conclusive against a collateral attack. State v.
Mackin, 51 Mo. App. 308; State v. Evans, 83 Mo.
319; State ex rel. v. Weatherly, 45 Mo. 17. (3) In
investigating as to whether the Local Option Law was
in force in Carthage, the county court, on an applica-
tion for a dramshop license, could only look to the
records to determine whether a valid election had been
held for the purpose of adopting said law. The con-
clusion of the city council, if supported by the rec-
ord, is conclusive as against a collateral attack. State
ex rel. v. Young, 84 Mo. 90; 28 Cyc. 1062. (4) Every
question which was raised and every question which
might have been raised at the hearing before the
county court on the application of relator for a dram-
shop license is *res adjudicata.* Greenabaum v. El-
liott, 60 Mo. 25; Brown v. Woody, 22 Mo. App. 253;
Ketcham v. Christman, 128 Mo. 38; Donnell v. Wright,
147 Mo. 639; Hamilton v. McLean, 169 Mo. 61. (5)
It is contended by appellant that relief by a manda-
mus proceeding is available to him, because he has no
adequate remedy at law. Sec. 2055, R. S. 1909, pro-
vides that writs of error shall issue on demand, as a
matter of right, on the final decision or judgment of
a county court, from the circuit court. Sec. 2028 pro-
vides that in any civil suit in any court of record
the person composing the court shall sign a bill of
exceptions, when any party to such suit shall write his
exceptions and pray the court to allow and sign the

same. A proceeding on an application for a license to keep a dramshop is a civil suit. County v. Philpot, 66 Ark. 243. A county court is a court of record. Under the law a bill of exceptions becomes a part of the record. Therefore, could not the relator obtain adequate relief at law by means of a writ of error? (6) A county court may be compelled to take cognizance of a matter of which it has jurisdiction, but it will not be compelled by mandamus to enter up a specific judgment, although it may appear from the facts of the case that such judgment would be proper. It must exercise its own judgment as to how the matter shall be determined, and no other court can require it to decide in any particular way. Miltenber v. County, 50 Mo. 172; State ex rel. v. Court, 87 Mo. 376; Hulse v. Marshall, 9 Mo. App. 148; State ex rel. v. Smith, 105 Mo. 9; State ex rel. v. Buhler, 90 Mo. 560; State ex rel. v. Lesueur, 126 Mo. 413; State ex rel. v. Wooten, 139 Mo. App. 226.

KENNISH, J.—This proceeding by mandamus was brought by the relator in the circuit court of Jasper county, against the respondents as judges of the county court. The purpose of the suit was to compel the respondents as such judges to grant a license to relator to keep a dramshop in the city of Carthage, a city of over 2500 inhabitants in said county. Upon a trial a peremptory writ of mandamus was denied and relator appealed to the Springfield Court of Appeals, in which court the judgment was affirmed. After the affirmance of the judgment the case was transferred to this court upon the motion of appellant, on the ground that the construction of the Constitution of this State was involved in the case.

In the petition for mandamus facts were alleged showing that relator had complied with all the statutory requirements entitling him to a dramshop license, including an allegation that the petition was

signed by two-thirds of the persons qualified as petitioners. It was also alleged that a hearing was had in the county court, and although relator established all of said facts and respondents found such facts to be true, respondents wrongfully denied relator's application and petition. The prayer was that as relator "had no other legal remedy whatever in the premises," a writ of mandamus be issued as prayed. Respondents made return to the alternative writ, admitting that as judges of the county court they denied relator's petition for such license, and responding to the command of the alternative writ to show cause for such action, made three separate defenses, which, in substance, were but two, namely: First, that the Local Option Law was regularly adopted by the voters of said city and was in full force and effect therein at the times mentioned in the alternative writ. Second, that at the hearing in the county court, upon relator's application for such license, the question as to whether the Local Option Law was in force in said city of Carthage was heard and determined by the county court and was therefore *res adjudicata*. Relator filed answer to the return, admitting that an election was attempted to be held in said city to determine whether the Local Option Law should be put into force and effect therein, but denied that said law was legally adopted at the said election, and the legality of the election was challenged upon a number of grounds, such as that the notice of the election was insufficient; that the law against electioneering within one hundred feet of the polling places was violated; that one of the ballot boxes used remained unfastened during the election; and that many ballots were counted on which no numbers had been indorsed as required by law. The answer also contained a general denial.

Much testimony was introduced upon the issues thus made, at the close of which the court filed a written memorandum set out in the record, learnedly re-

viewing the law and the evidence, and concluding, as before stated, with a judgment denying the peremptory writ. Upon the hearing in the Court of Appeals one member thereof did not sit in the case, and each of the other two delivered an able opinion in affirmance of the judgment. The concurring opinion of NIXON, J., holds that as the Local Option Law, as amended in the year 1909, provided an adequate remedy for the contest of an election held under said law, such remedy was exclusive and that mandamus would not lie under the facts of this record. If that view is well founded, and the statute as amended by the Act of 1909 is constitutional, it is decisive of the case and renders unnecessary a review of the many other interesting questions presented by counsel.

Sec. 7242, R. S. 1909, a section of the Local Option Law, as enacted in 1887, contained this provision: "The election in this act provided for, and the result thereof, may be contested in the same manner as is now provided by law for the contest of the elections of county officers in this State." In the case of Kehr v. Columbia, 136 Mo. App. 322, it was held that the foregoing provision was unenforceable for the reason that no party was authorized to bring such a proceeding, or to defend against it if brought. Pursuant to that decision the Forty-fifth General Assembly (Laws 1909, p. 470) amended said section by adding thereto and to the foregoing provision, the following: "by any qualified voter of the municipal body or of the county in which said local option election shall be held by an action to contest as herein provided, and which shall be brought against the municipal body or the county holding said election." As heretofore stated, NIXON, J., concurred in affirming the judgment of the trial court, upon the ground that the foregoing statute as amended provided an exclusive remedy for the contest of a local option election, and that the remedy by a writ of mandamus was without authority

of law. Relator thereupon alleged, by motion to transfer the cause to this court, that said section 7242, in so far as it authorized the contest of an election, was in contravention of Sec. 28, Art. 4, of the Constitution of this State, in that such provision was not clearly expressed in the title of the act, and upon that ground rests the jurisdiction of this court. That the constitutional question was regularly raised and is properly presented by the record, is not contested by respondents.

I. The title of the Local Option Act (Laws 1887, p. 179) is as follows: "An act to provide for the preventing of the evils of intemperance by local option in any county in this State, and in cities of twenty-five hundred inhabitants or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city; to provide penalties for its violation, and for other purposes." Is such title sufficient to uphold the provision for the contest of the election referred to and provided for in the act? We think it is.

The title purports to cover the subject of an election for the purpose of prohibiting the sale of intoxicating liquors, and a provision in the act for a contest of the election so held is so clearly germane and directly connected with the subject expressed in the title that we entertain no doubt as to its constitutionality upon that ground. An attack upon the validity of a statute because of alleged conflict with the constitutional provision now under consideration is so frequently made and has been considered in so many cases by this court that we deem it unnecessary to do more than state our conclusion, and cite a few of the authorities which discuss the question and fully sustain the conclusion reached. [Coffey v. City of Carthage, 200 Mo. 616; State v. Doerring, 194 Mo. 398; State ex rel. v. Slover, 134 Mo. 10.]

II.   Is relator entitled to relief by writ of mandamus, under the facts of this record? We are of the opinion that he is not. Mandamus is an extraordinary writ and will be granted only when the relator, as alleged in the petition in this case, is without "other legal remedy." This principle of law is well established, and the decisions of this court are in full accord with it. As said by this court in the case of State ex rel. v. McAuliffe, 48 Mo. l. c. 114: "The principle is unquestioned, laid down by the text-writers and established by the adjudged cases, that mandamus will only lie where the relator has a specific right and the law has provided no other specific remedy." See, also, State ex rel. v. Engelmann, 86 Mo. l. c. 561; State ex rel. v. Smith, 104 Mo. 661; 2 Spelling on Extraordinary Remedies, 1374; 26 Cyc. 175; 19 Am. and Eng. Ency. Law (2 Ed.), 745.

It is shown by the pleadings herein and by the records of the county court introduced in evidence that the ground, and the only ground, upon which the respondents refused the dramshop license to the relator, was that an election had been held under the Local Option Law in the city of Carthage, where relator proposed to keep his dramshop, and that as the result of such election the law had been declared in force and effect in that city. If the law had been so adopted it necessarily followed that respondents rightly refused the license. That much relator concedes, but he attacks the legality of the election and asserts the right to contest it by mandamus upon a number of grounds, every one of which would have been available in the statutory proceeding provided for that purpose in the Local Option Law. It therefore follows that as a specific and adequate remedy was provided by the statute, relief by mandamus must be denied.

The same result is reached if we consider the question from the point of view of the rights of the

parties and the remedy as provided by the Local Option Law.

It was within the power of the Legislature to designate the tribunal, the parties and the procedure for the contest of an election. [Sec. 9, Art. 8, Constitution of Missouri; State ex rel. v. Slover, 134 Mo. 10; State ex rel. v. Mason, 77 Mo. 189; State ex rel. v. Francis, 88 Mo. 557.] In the exercise of that power the General Assembly of this State enacted Art. 6, Ch. 43, R. S. 1909, prescribing a complete remedy for the contest of an election to office by a private citizen. Such right of contest did not exist at common law, and therefore the statutory remedy is exclusive. [State ex rel. v. Slover, supra; State ex rel. v. Mason, supra; 15 Cyc. 394; 7 Ency. Pl. & Pr. 377; Sedgwick, Const. Stat. and Cons. Law, 343.] In the Slover case, supra, l. c. 14, this court said: "It was clearly competent for the Legislature to create the office of marshal of Jackson county and to provide a tribunal to hear and determine *all* contests therefor and having done so in one and the same act the jurisdiction thus conferred is exclusive unless otherwise expressed or plainly manifested," and, l. c. 15: "A contested election is a purely statutory proceeding in Missouri, both as to the tribunal and the character of the proceeding, and was unknown at common law."

In providing that the election under the Local Option Law "may be contested in the same manner as is now provided by law for the contest of the election of county officers in this State," the Legislature adopted another statute or mode of procedure by reference, a practice in legislation discussed at length and upheld by this court in a number of recent decisions. [State v. Peyton, 234 Mo. 517; State v. Cox, 234 Mo. 605; State ex rel. v. Taylor, 220 Mo. 618.]

The 1909 amendment of the Local Option Law not only conferred the right upon "any qualified voter" to contest the election in accordance with the

procedure in election contests, but it also conferred upon "the municipal body or the county holding such election" the rights of a contestee in case of a contest under the general election law. That means, among other things, the right to be heard in court in any action contesting the legality of the election, and the right to notice of such contest "within twenty days after the votes shall have been officially counted," a failure to give which notice works a forfeiture of the right to contest. [Sec. 5924, R. S. 1909; Castello v. St. Louis Circuit Court, 28 Mo. 259.]

The statutory remedy recognizes the right of the municipality or county holding the election to have its day in court to defend against an attack upon the result of the election as declared, whether such result be in favor of or against the adoption of the law, and likewise the right of the qualified voter to contest the election. Suppose the result should be wrongfully declared and promulgated as against the adoption of the Local Option Law, when the fact was otherwise. It is plain in such case that those favoring the adoption of the law could not have the legality of the election and the result thereof litigated, either by a proceeding in the county court or by mandamus in the circuit court. They would have but one remedy and that the remedy provided by contest under the statute. And if that remedy is exclusive as to those favoring the adoption of the law, no good reason can be given why it should not also be exclusive as to those opposed.

As shown by the facts of this record the relator appeared in the county court a year after the Local Option Law had been adopted and was in force and effect in the city of Carthage, and upon an application for a dramshop license, without the municipality or any legal representative of the State being a party to the proceeding, asked the court to hold the local option election and the result thereof invalid, and that an

important public statute was not in force in the city of Carthage, although it had been otherwise declared by the regularly constituted authorities, pursuant to an election for that purpose. That the respondents, as members of the county court, properly refused to take such action, and that the circuit court properly denied the peremptory writ of mandamus against the respondents, is fully sustained by the law governing the contest of elections, and by the foregoing principles of the law of mandamus. The judgment is affirmed.

All concur except *Graves, J.,* who dissents in an opinion filed.

## DISSENTING OPINION.

GRAVES, J.—The principal opinion is predicated on the theory that, because we have a statute which authorizes a contest in local option elections, that therefore this relator had an adequate remedy other than by mandamus, and for that reason the writ should be refused. It proceeds further upon the theory that the contest proceeding is an exclusive remedy, and there having been no contest within the time, the whole matter is foreclosed. To these propositions I cannot assent. What the real merits of the case are, I have not investigated and therefore express no opinion, but if these two are the only reasons for refusing the writ, I can see no reason why it should not go. There may be other reasons in the record, which would preclude the issuance of the writ, but it is only my purpose to voice my dissent as to the two pivotal questions discussed in the principal opinion. These I take in inverse order.

1. Failure to contest an election does not preclude one having an interest from attacking the validity of the election. Suppose the record of the county court failed to disclose a petition signed by the requisite number of petitioners. Suppose the record failed

to show the requisite notice. Suppose the record failed to show a proper canvass of the returns. In fact we might designate a dozen things which go to make up the county court's record which might be challenged. Not only challenged, but successfully challenged. In other words its silence upon jurisdictional questions might itself render an otherwise valid election nugatory. These are not things investigated in what we understand to be contest proceedings. The statute of 1909 simply places this election in the category of election for officers, so far as contests are concerned. It designates the contestant and the contestee, but it does not add to the procedure things which are not contemplated in ordinary contests for office. Now in contests for office the proceeding is based upon the theory that the election as a whole is not defeated, but that by some acts during the election contestant or contestee has been defrauded of his rights. The contest mentioned in the statute proceeds upon the theory that there has been an election, and the only question is as to what the result has been as between contestant and contestee. Both are claiming under the election.

But in local option elections and other special elections there are other things which of themselves render the whole proceeding void. Some of those things we have named. It will not do therefore to announce the broad rule, as the principal opinion seemingly announces, that all matters are set at rest by a failure to contest within the statutory period.

2. Nor do we believe that the statutory proceeding by contest is an exclusive remedy. Prior to the statute we had a remedy by mandamus. The remedy has been so often recognized by the courts, that citation of the cases wherein the remedy has been recognized in local option cases would be useless. As lawyers we have tried them at the bar, both in circuit and appellate courts. There is nothing in this statute

as to contests which attempts to make it an exclusive remedy. Usually when there is an existing remedy and a statute is passed which does not within itself purport to make it the exclusive remedy, the statutory remedy is a cumulative one, and not an exclusive one. Such has been the general construction given to statutory remedies. For this as well as the reason first above assigned, I do not believe the contest proceeding provided for by the statute is an exclusive remedy. If these are the only grounds in this record for refusing the writ I am satisfied that we have another "guess coming."

3. I said that I would not go beyond the principal opinion, and would express views upon but the two points. I shall, however, go a step further, but still within the question discussed by the opinion. I agree that the title of the bill is not such as to make the new contest law invalid, but will suggest that Sec. 9 of Art. 8 of the Constitution only speaks of contests for office and not of contests of elections upon public questions. When that section authorizes the Legislature to act, might not its authority be limited to the subject expressed in the Constitution? The Constitution closes the ballot boxes except as to "contested elections." [Sec. 3, Art. 8, Const. of 1875.] The only contested elections spoken of in the Constitution are "of all public officers, whether state, judicial, municipal or local." Not a word in the Constitution about contests over other matters. It is a question whether there is any constitutional warrant for the Act of 1909. This we offer only as a suggestion. What I desire to do is to dissent from the doctrine announced by my brother as above indicated under points 1 and 2 of these remarks.