STATE of Missouri ex rel. John E. KEL-
LEY, Samuel Epstein, William F. Dancy
and Robert Wallerstedt, Respondents,

v.

James E. MITCHELL, As Acting
Director of Revenue for Jackson
County, Missouri, Appellant.

No. 61741.

Supreme Court of Missouri,
En Banc.

March 11, 1980.

Fred A. Murdock, Special Asst. County
Counselor, R. Jay Ingraham, County Coun-
selor, Joe M. Williams, Deputy County
Counselor, Valarie Zeeck, Asst. County
Counselor, Kansas City, for respondent-ap-
pellant.

Billy S. Sparks, Robert B. Langworthy,
William T. Session, Charles C. Curry, Kan-
sas City, for relators-respondents.

Richard Webster, Elliston & Webster,
Webb City, Max W. Foust, E. Wayne Taff,
Morris & Foust, Kansas City, amicus curiae
Bd. of Election Com'rs of Jackson County,
Missouri.

WELLIVER, Judge.

Appellant, James E. Mitchell, the Acting
Director of Revenue for Jackson County,
Missouri, seeks relief from a peremptory
writ of mandamus issued by the Circuit
Court of Jackson County on October 4,
1979, commanding appellant to accept, hon-
or and pay certain salary warrants issued
by respondents, the Kansas City Board of
Election Commissioners. The case arises
from the same factual setting as *State ex
rel. Jackson County, Mo. v. Randall*, Mo.,
595 S.W.2d 269, decided concurrently
herewith. Jurisdiction is in this Court be-
cause the case involves construction of the
revenue laws of this state. *State ex rel.
Strong v. Cribb*, 364 Mo. 1122, 273 S.W.2d

246, 247 (banc 1954); *State ex rel. Hadley v. Adkins*, 221 Mo. 112, 118, 119 S.W. 1091, 1093 (1909). The judgment of the trial court is reversed.

The dispute arises out of an attempt by respondents, four Commissioners of the Kansas City Board of Election Commissioners (hereinafter, the "Board"), to increase the salaries of the Board's employees. The factual and procedural history of this case is complex. In October 1979, four proceedings involving this dispute were pending, three of them involving extraordinary writs in this Court. The case presents a classic example of the waste and delay that can result when parties to a dispute. treat the extraordinary writs as if they were universal remedies.

Under § 115.071, RSMo. 1978, Jackson County (hereinafter, the "County") pays one-half of the Board's salaries and Kansas City pays the other one-half. For convenience, it has been agreed that the County pays the salaries on the fifteenth of each month and Kansas City pays the salaries on the last day of each month.

The Jackson County Legislature appropriated $444,764 for use by the Board in 1979, in Ordinance No. 665, adopted December 18, 1978. The budget ordinance listed the total appropriation for the Board in a lump-sum figure, without specifying the amount authorized for salaries; however, the amount appropriated was in response to the Board's budget request to the County for 1979, which included an estimate for the salaries of the Board's employees of $174,200.

On July 17, 1979, the Board voted to increase the salaries of certain of its permanent employees. The Board notified Jackson County and the City of Kansas City of the proposed salary increases on July 19, 1979. The Board's announcement stated that the aggregate of the annual salaries paid to all Board employees prior to the adjustments was $342,270, and that the aggregate of annual salaries paid to all Board employees after the adjustment would be $372,958. The number of employees would remain at 38. The salary increases were to become effective on August 1, 1979.[1]

Jackson County officials asked the Board to postpone implementing the salary increases for thirty days, which the Board agreed to do. The City of Kansas City did not make a similar request, so the Board implemented the City portion of the increase on August 1, 1979. Because of the system used for paying Board employees, the employees first received payments at the increased salaries from the City of Kansas City on August 31, 1979. Meetings were held between Board representatives and County officials on August 28, 1979, and August 31, 1979, but these meetings failed to produce further agreement on the proposed raises.

On the evening of September 10, 1979, the Jackson County Legislature passed Resolution No. 3517 disapproving the pay raise announced by the Board because, among other reasons, the Board had not conformed to the requirements of subsection 3 of § 115.049, RSMo. 1978, that the Board give notice of such an increase at least ninety days in advance of its effective date and that the notice "include a justification of the increase." At 10:40 a. m. on September

---

1. The County's half of the total amount of annual salaries paid to all Board employees prior to the raises recited in the Board's announcement, is $171,135. This figure is somewhat less than the $174,200 originally estimated for salaries in the budget request that the Board submitted to the County for 1979. The County's half of the total of annual salaries paid to all Board employees after the raises were implemented would be $186,479.

The Board proposes to implement the salary increases without exceeding its overall appropriation from Jackson County for 1979, by shifting an unencumbered surplus from a non-salary account to the salary account. For example, the Board proposes to use $7,566.45 that had been budgeted for the Kansas City primary election but not used for that purpose ($40,700 was budgeted but only $33,143.55 was spent), to defray part of the cost of the increase in salaries. Appellant conceded in his testimony that the proposed salary increases would not cause the Board to exceed their budgeted appropriations, if the transfers from non-salary accounts were made.

ed the Board to employ up to 52 employees (other than the four commissioners themselves), and authorized a total yearly amount of all salaries paid to the Board's employees (excluding the salaries of the commissioners) of $405,400. The notice that the Board sent to the County on July 19, 1979, announced that the Board proposed to raise the aggregate of annual salaries paid to all Board employees to $372,958, effective August 1, 1979. It cannot be disputed that the notice which the Board sent to the County on July 19, 1979, does not meet the requirements of § 115.049.3 that notice of an increase in total salaries "shall include a justification of the increase" and that such notice shall specify a day, at least ninety days after delivery of the notice, that the increase is to take effect. Counsel for the respondents (the Board) admitted in oral argument in this Court that the Board's announcement did not comply with the requirements, and stated that it was not intended to so comply. The Board contends that, so long as the salaries that it sets for its employees do not exceed $405,400, it is not required to follow the procedures outlined in subsection 3 of § 115.049, RSMo 1978. Consequently, the Board argues that the disapproval of the proposed increases by the Jackson County Legislature in Resolution No. 3517 passed on September 10, 1979, is without effect. The Board thus asserts that it is autonomous in setting the salaries of its employees so long as the total of those salaries is less than or equal to $405,400.

Appellant contends that the Board's proposed action violates the provisions of the County Budget Law, §§ 50.540 to 50.640, RSMo 1978, particularly § 50.630, RSMo 1978, which relates to transfer of unspent appropriations from one *agency* to another. Appellant also contends that the construction of § 115.049.1, RSMo 1978, argued by respondents and adopted by the circuit

court in this case renders § 115.049.3 a nullity. Appellant further contends that even if subsection 1 of § 115.049 makes the Board autonomous in setting the salaries of its employees so long as the total of those salaries is not greater than $405,400, the statute was intended to be transitional, and grant autonomy to the Board only for 1978, the first year following the effective date of the statute. While it appears that the Board's interpretation is the correct one, we decline to reach these issues.[3]

■ The threshold question to be determined is whether mandamus is an appropriate remedial vehicle to resolve this dispute. It is a long-established principle of law that mandamus does not issue where there is another adequate remedy available to relator. *State ex rel. Stallman v. Bourke*, 345 Mo. 837, 136 S.W.2d 326, 327 (1940) (affirming denial of writ; alternative remedy for challenging denial by board of health of license to practice medicine was by writ of certiorari); *State ex rel. Horton v. Bourke*, 344 Mo. 826, 129 S.W.2d 866, 868–69 (1939) (reversing grant of writ; appropriate remedy for challenging revocation of license to practice medicine was by suit in equity alleging fraud); *State ex rel. Schneider v. Bourke*, 338 Mo. 86, 89 S.W.2d 31, 32 (1935) (reversing grant of writ; appropriate remedy for challenging denial of license to practice medicine was writ of certiorari); *State ex rel. Brunjes v. Linville*, Mo., 8 S.W.2d 623, 623–24 (1928) (affirming denial of peremptory writ; appropriate remedy for prosecuting attorney to recover backpay was suit on employment contract); *State ex rel. Kansas City v. Kansas City Gas Co.*, 254 Mo. 515, 163 S.W. 854, 857 (banc 1914) (quashing alternative writ in original proceeding; proper remedy to obtain sufficient gas pressure from utility company was complaint to Public Service Commission); *State ex rel.*

---

**3.** Even if respondents' construction of § 115.-049, RSMo 1978, is eventually adopted by the courts in appropriate proceedings, it may be observed that, with the current rate of inflation in double digits, the Board's statutory "autonomy" will be short-lived. For example, if the Board were to seek a mere 9% increase in its employees' total salaries in 1980 over those

announced in 1979, the increase would raise the employees' total salaries from $372,958 to $406,524. Such an increase, being over the $405,400 authorized on December 31, 1977, would require the approval of the local governmental bodies after notice and justification, as respondents interpret § 115.049, RSMo 1978.

*Rainwater v. Ross*, 245 Mo. 36, 149 S.W. 451, 452 (1912) (affirming denial of writ; proper remedy to contest legality of dramshop law election was statutory remedy under local option law); *Mansfield v. Fuller*, 50 Mo. 338, 340 (1872) (reversing grant of writ; proper remedy to obtain payment from county for sheriff's posse was in ordinary action); *State ex rel. Bornefeld v. Rombauer*, 46 Mo. 155, 156–57 (1870) (affirming denial of writ; proper remedy to compel transfer of shares of stock was action on the contract of sale); *State ex rel. Bohannon v. Howard County Court*, 39 Mo. 375, 377 (1867) (affirming denial of writ; proper remedy to compel payment of civil war volunteer's bounty was action on the contract); *State ex rel. Sho-Me Power Corporation v. Hawkins*, 337 S.W.2d 441, 444 n. 8 (Mo.App.1960) (denying peremptory writ; proper remedy for power company to obtain discovery was motion in trial court under rules of civil procedure); *State ex rel. Lyons v. Bank of Conception*, 174 Mo.App. 589, 163 S.W. 945, 948 (1913) (affirming denial of writ; proper remedy to compel treatment as stockholder in insolvent bank was bill in equity). *See also State ex rel. Keystone Laundry and Dry Cleaners, Inc., v. McDonnell*, 426 S.W.2d 11, 15 (Mo.1968); *State ex rel. Phillip v. Public School Retirement System of City of St. Louis*, 364 Mo. 395, 406, 262 S.W.2d 569, 574 (banc 1953); *State ex rel. Snow Steam Pump Works v. Homer*, 249 Mo. 58, 155 S.W. 405–406 (banc 1913); *State ex rel. Porter v. Hudson*, 226 Mo. 239, 126 S.W. 733, 740 (banc 1910); *State ex rel. Adamson v. Lafayette County Court*, 41 Mo. 221, 222, 225 (1867); *State ex rel. Bartley v. Governor*, 39 Mo. 388, 400 (1867); *Dunklin County v. The District Court of Dunklin County*, 23 Mo. 449, 454 (1856).[4]

▉ The rationale behind the rule that mandamus is not allowed when another adequate remedy is available was explained in *State ex rel. Porter v. Hudson*, 226 Mo. 239, 266, 126 S.W. 733, 740 (banc 1910):

Mandamus is essentially an inflexible and unreasoning writ. Its terms are cast iron, hard and fast. It says to one go, and he goeth—come, and he cometh. Therefore, it does not go where there is any other adequate remedy . . . . .

In *State ex rel. Kansas City v. Kansas City Gas Co.*, 254 Mo. 515, 163 S.W. 854, 857 (banc 1914) it was well stated:

[A] writ of mandamus has been justly denominated a hard and fast writ, and an unreasoning writ, a cast-iron writ, the right arm of the court. It is essentially the exponent of judicial power, and hence is reserved for extraordinary emergencies. It does not issue except in cases where the ministerial duty sought to be coerced is simple and definite, arising under conditions admitted or proved and imposed by law. It does not issue where the right is doubtful, or where there is another adequate remedy.

There is no remedy that a court can provide that is more drastic, no exercise of raw judicial power that is more awesome, than that available through the extraordinary writ of mandamus. Recognizing the extreme nature of the order to act in accordance with a peremptory writ of mandamus, we believe that the remedial writ ought to be reserved for those cases in which no alternative measure will be effective. "Its object is not to supersede but to supply the

4. The rule is often relied on where adequate relief can be afforded by an appeal. *State ex rel. Howe v. Hughes*, 343 Mo. 827, 123 S.W.2d 105, 110 (1938); *State ex rel. Lamport v. Robinson*, 257 Mo. 584, 165 S.W. 997, 998–99 (banc 1914); *Sheridan v. Fleming*, 2 S.W. 838, 839 (Mo.1887); *State ex rel. Phelan v. Engelmann*, 86 Mo. 551, 561 (1885); *State ex rel. Evans & Howard Fire Brick Co. v. Lubke*, 85 Mo. 338, 339 (1884); *State ex rel. Wheeler v. McAuliffe*, 48 Mo. 112, 115 (1871); *Blecker v. St. Louis Law Commissioner*, 30 Mo. 111, 113 (1860); *Williams v. Judge of the Cooper Court of Common Pleas*, 27 Mo. 225, 227 (1858); *State ex rel. Mary Frances Realty Co. v. Homer*, 150 Mo.App. 325, 130 S.W. 510, 512 (1910). See Thomson and Campbell, Mandamus, Missouri Appellate Practice and Extraordinary Remedies (2nd ed. 1974) 8–5 to 8–6; Tuchler, Discretionary Interlocutory Review in Missouri: Judicial Abuse of the Writ?, 50 Mo.L.Rev. 577, 589–93 (1975); Note, Mandamus in Missouri: Old Standards and New Developments, 1972 Wash. U.L.Q. 719, 733–34 nn. 104–110 (1972); 55 C.J.S. Mandamus § 17, pp. 41–49.

10, 1979, appellant filed a petition for declaratory judgment in the Circuit Court of Jackson County, asking the court to declare that the salary increases proposed by the Board

> are in excess of the power of the [Board] to implement without compliance with the requirements of Section 115.049.3 RSMo.; [and] to declare that it is the Plaintiff's duty to cause salary warrants (or checks) to be refused and dishonored by Jackson County if the same are presented for payment in an amount in excess of the level budgeted to each [Board employee].

The afternoon of September 11, 1979, the Board filed a petition for a writ of mandamus with the Circuit Court of Jackson County, to compel appellant, the Acting Director of Revenue of Jackson County, James E. Mitchell, to accept, honor, and pay the salary warrants which the Board planned to distribute to its employees on September 15, 1979, "or on any other subsequent date as designated by the Board."

On September 13, 1979, the Circuit Court of Jackson County issued an alternative writ of mandamus, ordering appellant to accept, honor and pay the warrants drawn by relators as prayed in relators' petition or that he appear before the court on September 14, 1979, to show cause why he should not take the actions as prayed. After a brief hearing on September 14, 1979, the court modified the alternative writ to reschedule the show cause hearing for September 26, 1979.

In the hearing on September 26, 1979, appellant Acting Director Mitchell and the Board's Principal Director, Stanley D. Rostov testified, and respondents made an offer of proof of the testimony of Professor Charles B. Blackmar. At the conclusion of the hearing, the trial court announced that it agreed with the interpretation of § 115.-049, RSMo. 1978, urged by the Board, and that it did not believe that the County Budget Law prevented the Board's salary increase so long as the total which the Board spent during 1979 remained below the sum appropriated for the Board by the County for 1979.

On October 4, 1979, the court entered its Judgment of Peremptory Mandamus and Peremptory Writ of Mandamus which required appellant to honor and pay such warrants as are issued by the Board for salaries of employees. On October 9, 1979, appellant filed his motion for a new trial, alleging, among other grounds, that the court erred because the peremptory writ required appellant to perform acts in his official capacity which he had no authority to perform. The motion was supported by appellant's affidavit which set forth the procedure followed by the County to pay its obligations. Attached to appellant's affidavit was a certified copy of Ordinance No. 354 of the Jackson County Legislature, adopted February 17, 1976, which provided that all disbursements of County funds shall be made by checks signed by any two of the Director of Revenue, the county executive, and the clerk of the county legislature.

The Board filed an affidavit of Principal Director Rostov in opposition to the motion for new trial, in which Rostov stated that the Board had used salary warrants issued against the County treasury in the payment of its employees without challenge by the County since January 1, 1978 and "as far back as [affiant] has any knowledge."

On October 12, 1979, the court overruled appellant's motion for new trial, and the same day appellant filed notice of appeal to this Court with the Circuit Court of Jackson County.

Despite the fact that the instant appeal was pending, on October 15, 1979, the Board issued the salary warrants in the higher, disputed amounts. Appellant directed the Traders Bank to refuse to accept and pay warrants that reflected the salary increases.

On October 16, 1979, the Board filed in the Court of Appeals, Western District, a petition for a writ of mandamus seeking the same relief as that sought by the petition filed on September 11, 1979, and granted by the judgment of October 4, 1979, which is the subject of this appeal. That petition was dismissed without prejudice.

On October 17, 1979, the Board filed a motion with the Jackson County Circuit Court to hold appellant in contempt for failing to obey the peremptory writ. On the same day, the court found appellant in contempt of court for his refusal to follow its order of October 4, 1979, and ordered him into the custody of the Jackson County Department of Corrections to be held in the County Jail until he purged himself of the civil contempt. The court refused to set bond to stay execution of his judgment and order of October 4, 1979.

On October 22, 1979, appellant Mitchell and Jackson County filed a petition for a writ of prohibition in this Court (cause no. 61743) to prevent the trial court from enforcing its peremptory writ and to set aside the order of commitment for contempt. On the same day, October 22, 1979, the Board filed in this Court a petition for a writ of mandamus (cause no. 61744) to compel appellant and the County to honor the salary warrants containing the salary increases. The Court promptly entered a stop order against execution or enforcement of the peremptory writ of mandamus and set aside the order of commitment for contempt until further order of the Court.

On October 29, 1979, this Court denied respondent Board's petition for a writ of mandamus in cause no. 61744. The Court also ordered the appeal in this case, cause no. 61741, expedited and placed on the Court's docket for the January 1980 term. The Court also issued its preliminary writ of prohibition in cause no. 61743, and ordered the case docketed to be heard on the same date and immediately following the hearing of the appeal in the instant case.

The central question in this case is whether the Board may increase the total salaries of its employees to $372,958 without follow-ing the procedures outlined in § 115.049.3, RSMo. 1978. The relevant portions of § 115.049, RSMo. 1978, are as follows:

1. Each board of election commissioners in existence on January 1, 1978, shall set the salaries of its employees. Except as provided in subsection 3 of this section, the number of employees of each board and the total yearly amount of all salaries paid to the board's employees shall not exceed the number of employees and the total yearly amount of all salaries authorized by statute on December 31, 1977.

. . . . .

3. If any board of election commissioners wishes to increase the number of its employees or the total yearly amount of all salaries paid to its employees, the board shall deliver a notice of the fact to the presiding officer of the local legislative body or bodies responsible for providing payment of the election commissioners' salaries. The notice shall specify the number of additional employees requested and the additional yearly amount requested by the board and shall include a justification of the increase and a day, not less than ninety days after the notice is delivered, on which the increase is to take effect. Unless any legislative body responsible for approving payment of the election commissioners' salaries adopts a resolution disapproving the increase, the increase shall take effect on the day specified.

The provision relating to "the number of employees and the total yearly amount of all salaries [paid to the Board's employees] authorized by statute on December 31, 1977" refers to that number and amount authorized in § 117.140, RSMo Supp.1975.[2] Section 117.140, RSMo Supp.1975, authoriz-

---

2. Section 117.140, RSMo Supp.1975, provided in considerable detail what employees the Board may have, and what the salary ranges for those employees may be. Excluding the four commissioners, each having an authorized salary of $5,200, § 117.140, RSMo Supp.1975, provided for the following Board employees:

| TITLE AND NUMBER OF EMPLOYEES | MAXIMUM SALARY | TOTAL SALARIES |
|---|---|---|
| Directors of election (2) | $16,000 | $32,000 |
| Assistant directors (2) | 12,500 | 25,000 |
| Chief warehouse technicians (2) | 11,500 | 23,000 |
| Voting machine technicians (4) | 9,000 | 36,000 |
| Department supervisors (12) | 8,000 | 96,000 |
| Secretaries to directors (2) | 7,500 | 15,000 |
| Clerks (26) | 6,400 | 166,400 |
| Counselors (2) | 6,000 | 12,000 |
| TOTAL: 52 employees | | $405,400 |

want of a legal remedy." *State ex rel. Brunjes v. Linville*, Mo., 8 S.W.2d 623, 623 (1928).

It is undisputed that the relators had an alternative remedy available to them for the resolution of the instant dispute. Appellant had filed an action seeking a declaratory judgment to remove the uncertainty and controversy regarding the construction of § 115.049, RSMo 1978, on September 10, 1979. By filing the action for declaratory judgment seeking a judicial declaration concerning "the rights and duties of the parties in the premises," appellant demonstrated his willingness to submit the controversy surrounding construction of § 115.049, RSMo 1978, to the judgment of the court.

The County remained willing to pay and throughout the pendency of this litigation has continued to pay the salaries of the Board's employees at the rates that were in effect before the Board announced the salary increases in dispute. The City agreed to pay their half of the raises from the outset, and also to pay the County's half of the raises for at least part of the time that this litigation has been pending. Counsel for the Board made statements in oral argument before this Court in the companion case of *State ex rel. Jackson County, Missouri v. Randall*, Mo., 595 S.W.2d 269 to the effect that the raises were implemented because the Board was in danger of losing its employees, and that the continued operation of the Board would be jeopardized by the failure of the County to pay all or part of the raises. Opposing counsel protested the argument of facts not in the record suggesting that the Court should "be aware that there is another side of the story that is off the record." Aside from these off the record statements, there is no substantial proof in the record either that employees threatened to leave or that the operation of the Board was in jeopardy. The record discloses no reason to doubt that the relators would be able to receive full, prompt and adequate relief in the declaratory judgment action. While our own liberality in issuing extraordinary writs in recent years may have invited the war of writs now

before us, we are unable to perceive any reason why the declaratory judgment action could not as easily have been before us at this time. We believe the issuance of the peremptory writ in these circumstances constituted an abuse of discretion.

In the respondents' brief it is contended that mandamus is an appropriate remedy in the case at bar, citing *State ex rel. Sanders v. Cervantes*, 480 S.W.2d 888 (Mo.1972); *State ex rel. Volker v. Kirby*, 345 Mo. 811, 136 S.W.2d 324 (banc 1940); and *State ex rel. Volker v. Kirby*, 345 Mo. 801, 136 S.W.2d 319 (banc 1940). In the amicus curiae brief filed by the Board of Election Commissioners of Jackson County, it is contended that mandamus is an appropriate remedy in this case, citing in addition to the cases cited by respondents: *State ex rel. Phillip v. Public School Retirement System of City of St. Louis*, 364 Mo. 395, 262 S.W.2d 569 (1954); *State ex rel. Lovell v. Tinsley*, 241 Mo.App. 690, 236 S.W.2d 24 (1951); and *State ex rel. Black v. Wilson*, 158 Mo.App. 105, 139 S.W. 705 (1911). We have examined each of these cases and concluded that they do not alter the rule that the writ of mandamus is to be used only as a last resort on the failure of any adequate alternative remedy.

Both respondents and amicus contend that mandamus is appropriate in this case under the holding of *State ex rel. Williamson v. County Court of Barry County*, 363 S.W.2d 691, 693 (Mo.1963). In *Williamson*, this Court appeared to hold that mandamus will lie despite the existence of a complete and adequate alternative remedy, where a deputy circuit court clerk sought to compel the judges of the county court to issue a warrant to pay her salary. *Id.* at 693. *Williamson* relied on *State ex rel. Spratley v. Maries County*, 339 Mo. 577, 98 S.W.2d 623, 624 (1936) and *Perkins v. Burks*, 336 Mo. 248, 78 S.W.2d 845, 848–49 (1934). *Spratley* affirmed a judgment of the Circuit Court of Maries County, quashing an alternative writ of mandamus previously issued against the judges of the county court, in an action to compel the county court of

Maries County to issue a warrant to pay the salary of a deputy circuit court clerk. The Court in *Spratley* noted that the propriety of utilizing the remedy of mandamus was not contested by the judges of the county court, but stated that "if relator is entitled, on the case made, to the alleged increase, mandamus, it seems, will lie. *Perkins v. Burks et al.*, 336 Mo. 248, 78 S.W.(2d) 845, 848." 339 Mo. at 579, 98 S.W.2d at 624. *Perkins* reasoned that so long as the issue presented is purely one of law and there is no disputed question of fact, mandamus will lie to determine whether a salary fixed in amount by statute should not be paid to the relator. 336 Mo. at 253, 78 S.W.2d at 848. *Perkins* utterly failed to appreciate the reasons behind the courts' traditional reticence to resolve disputes in proceedings for a writ of mandamus when there is an adequate alternative remedy available, reasons relating to the drastic character of the writ of mandamus, as articulated in *State ex rel. Brunjes v. Linville*, Mo., 8 S.W.2d 623, 623–24 (1928); *State ex rel. Kansas City v. Kansas City Gas Co.*, 254 Mo. 515, 163 S.W. 854, 857 (banc 1914); *State ex rel. Rainwater v. Ross*, 245 Mo. 36, 149 S.W. 451, 452 (1912); *State ex rel. Phelan v. Engelmann*, 86 Mo. 551, 561 (1885); and *State ex rel. Mary Frances Realty Co. v. Homer*, 150 Mo.App. 325, 130 S.W. 510, 512 (1910). *Perkins* asserts:

> It is also true that mandamus is a proper remedy to determine the purely legal question of whether a public officer is entitled to a salary, fixed as to amount by law, in spite of the fact that two other remedies, appeal to the circuit court or suit against the county, exist. Those remedies might not, under the circumstances, be full, complete, and adequate. Mandamus is a short cut by which the matter can be speedily determined and it might not even be in the interest of the public for officer's salaries to be held up throughout the necessarily longer period of the ordinary course of an action at law [citations omitted], since for public officers to be engaged in long drawnout litigation over their compensation, with the cities or counties they serve, would likely tend to hinder and detract from the efficiency of their services.

336 Mo. 248, 254, 78 S.W.2d at 848–49. It may be noted that *Perkins*, decided in 1934, predated the passage of the Declaratory Judgments Act, Laws of Mo.1935, p. 218 (now §§ 527.010 to 527.140, RSMo 1978; see Rule 87). We would question the view that "mandamus is a short cut" for the speedy resolution of disputes that adequately may be resolved by other means. Before mandamus will lie, something more is required than the likelihood that the alternative remedies may involve inconvenient delay. As in the case of *State ex rel. Phelan v. Englemann*, 86 Mo. 551 (1885):

> Mandamus is not the proper remedy in this case. It is among the fundamentals of the law relating to the issuance of such a writ that it will not be awarded but as an extraordinary remedy, only issuing when the law, in the ordinary methods of its procedure, is powerless to grant relief. It results from this principle that relief will not be granted an aggrieved party in this unusual way, where he may attain the same result by invoking another adequate legal remedy. In all such cases the courts uniformly refuse to exercise their extraordinary jurisdiction in behalf of a party who, in such a situation, seeks it. . . . And the principle announced in respect to refusing the writ of mandamus is not affected, nor the case changed because the appropriate remedy may involve inconvenient delay, or operate harshly or oppressively on the party complaining . . . . .

86 Mo. at 561–62.

We would also question the broad assertion that mandamus will lie in any case involving only legal issues, despite the availability of an adequate alternative remedy. *See State ex rel. Gold v. Dunne*, 421 S.W.2d 268, 273 (Mo.1967). It is not the complexity of the fact-finding process that underlies the traditional rule that mandamus is proper only in the absence of adequate alternative remedies. Rather, is is the nature of the mandamus remedy itself that counsels restraint. *Perkins, Spratley,*

*Williamson,* and *Gold,* and other cases following *Perkins,*[5] should not be read as endorsing the use of mandamus where alternative remedies are full, complete and adequate. *State ex rel. Keystone Laundry & Dry Cleaners, Inc., v. McDonnell,* 426 S.W.2d 11, 15 (Mo.1968). It remains true that courts will not issue the extraordinary writ of mandamus when adequate relief may be had by alternative means.

The judgment of the trial court is reversed, and the peremptory writ of mandamus heretofore issued against appellant will be quashed.

DONNELLY, RENDLEN, and HIGGINS, JJ., concur.

BARDGETT, C. J., and SEILER and MORGAN, JJ., concur in result.

---

5. Other cases apparently adopting the view of *Perkins* that the availability of another adequate remedy does not preclude the issuance of the writ of mandamus include *State ex rel.* *Walther v. Johnson,* 351 Mo. 293, 173 S.W.2d 411, 415 (banc 1943); and *State ex rel. City of Republic v. Smith,* 345 Mo. 1158, 139 S.W.2d 929, 934 (banc 1940).