

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI EX REL. DR. ANNA FITZ-JAMES, )
)
Respondent, )
)
v. )  No. SC100132
)
ANDREW BAILEY, IN HIS OFFICIAL CAPACITY, )
)
Appellant, )
)
and )
)
SCOTT FITZPATRICK, et al. )
)
Respondents. )

*Opinion issued July 20, 2023*

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY

The Honorable Jon E. Beetem, Judge

Dr. Anna Fitz-James ("Fitz-James") filed a petition in the circuit court of Cole County seeking a writ of mandamus compelling Attorney General Andrew Bailey ("Attorney General") to approve fiscal note summaries for 11 proposed initiative petitions she had filed with Secretary of State John Ashcroft ("Secretary"). After briefing and argument, the circuit court made permanent its writ of mandamus ordering the Attorney General to do so and to forward notice of that approval to State Auditor Scott

Fitzpatrick ("Auditor"). The Attorney General appealed, and this Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

Nothing in section 116.175[1] gives the Attorney General authority to question the Auditor's assessment of the fiscal impact of a proposed petition. Instead, the Attorney General's authority extends only to reviewing the "legal content and form" of the fiscal notes and summaries prepared by the Auditor, not their substance. Because the circuit court in this case did not err in finding there was no defect in the "legal form and content" of the fiscal note summaries prepared by the Auditor concerning Fitz-James's proposed initiative petitions, the Attorney General's refusal to perform the plain, unequivocal, and ministerial duty of approving those summaries (and informing the Auditor he has done so) cannot be justified. The Attorney General was to have performed that task within 10 days of receiving the fiscal notes and summaries from the Auditor, a period that expired more than three months ago. Accordingly, the circuit court's decision to make permanent its writ of mandamus requiring the Attorney General to perform that duty is affirmed.

## Background

In March 2023, pursuant to the statutory requirements of section 116.332, Fitz-James submitted 11 proposed initiative petitions to the Secretary, who assigned to these proposed petitions the following initiative numbers: 2024-077, 2024-078, 2024-079, 2024-80, 2024-81, 2024-82, 2024-83, 2024-84, 2024-85, 2024-86, and 2024-87.

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

2

The Secretary posted the text of the initiatives on his website, as he was required to do by section 116.332, and sent a copy of each proposed petition to the Attorney General and the Auditor. The Attorney General, pursuant to section 116.332.3, approved the form of the proposed petitions and notified the Secretary, who agreed and notified Fitz-James of this approval as required by section 116.332.4.

Upon receiving the proposed petitions from the Secretary, the Auditor solicited input from 60 state and local governmental entities regarding estimated costs or savings, if any, of each proposed initiative. § 116.175.1.[2] In addition to these solicited submissions, the Auditor accepted and recorded unsolicited responses received from any other governmental entity, proponents, opponents, and members of the public.

The Department of Social Services, Department of Mental Health, and Department of Health and Senior Services indicated they anticipated no fiscal impact, other than unknown impact related to federal regulations. No other state department, nor the Attorney General, provided a response indicating any of the initiatives would jeopardize the state's federal Medicaid funding. The only county to report an anticipated fiscal impact was Greene County, which estimated a $51,000 fiscal loss. All other responsive counties reported no anticipated fiscal impact. Opponents of the initiatives indicated they believed the initiatives could risk the state's federal Medicaid funding and result in

---

[2] The Auditor solicited input from the Attorney General's Office; the Governor's office; the Missouri Senate; the Missouri House of Representatives; the Secretary of State's office; the Office of the State Public Defender; the State Treasurer's Office; the Office of Administration; the Office of State Courts Administrator; 16 different departments of state government; 12 counties; 14 cities; five school districts; and four colleges and universities.

reduced tax revenues.  The Auditor received no submission of estimated fiscal impact from proponents of the initiatives.

The Auditor then created a fiscal note, which recorded the responses received, and a fiscal note summary for each of the proposed petitions[3] and, on March 29, sent these documents to the Attorney General as required by section 116.175.2.  The Attorney General then had 10 days to approve the "legal content and form" of the fiscal note summaries and notify the Auditor of that approval.  § 116.175.4.  If the fiscal note summary was defective in either form or legal content, the Attorney General was to return the documents to the Auditor for revision.  § 116.175.5.

On April 10, the Attorney General notified the Auditor that he believed the "legal content" of each fiscal note and summary was deficient and returned the notes and summaries to the Auditor.  The Attorney General stated the fiscal notes were deficient because they contained "inadequate and divergent submissions" from government entities regarding the fiscal impact of the proposed initiatives.  The Attorney General also noted that he believed the fiscal note summaries were deficient because they: (1) did not accurately represent the true cost of the proposed measures to local and state government entities (because the fiscal notes did not do so), and (2) failed to adequately summarize the submissions the Auditor received regarding the potential loss of federal funding due to the proposed initiatives.

---

[3]   The fiscal notes vary slightly due to differences in the proposed petitions, but the fiscal note summaries produced for each proposed initiative are identical.

4

The Auditor disagreed and, on April 21, resubmitted the original fiscal notes and fiscal note summaries to the Attorney General. The Auditor informed the Attorney General that the fiscal notes and summaries complied with the requirements set forth in chapter 116 and that the Attorney General exceeded his review authority under section 116.175.4. On May 1, the Attorney General notified the Auditor that he disagreed and refused to approve the fiscal notes and summaries and that he had fulfilled his statutory duties.

Because of this logjam, the Secretary could not – and, to this day, cannot – complete his duty by certifying the official ballot titles for the proposed petitions. The ballot title is comprised of two parts: a "summary statement" and the fiscal note summary. § 116.180. Pursuant to section 116.334.1, the Secretary prepared a "summary statement" for each of the proposed petitions and sent them to the Attorney General for his review as to "legal content and form." The Attorney General approved them and notified the Secretary of that approval. Under section 116.180, however, the Secretary cannot certify the official ballot title for any of the proposed petitions until he receives **both** the approved summary statement **and** the approved fiscal note summary (as well as the fiscal note) pertaining to that proposed petition. Because the Attorney General refuses to perform his duty, neither the Auditor nor the Secretary can perform his.

Fitz-James is unable to move forward until this issue is resolved. Section 116.334.2 provides: "Signatures obtained prior to the date the official ballot title is

5

certified by the secretary of state shall not be counted."[4]  In addition, should Fitz-James (or any other citizen) wish to challenge the language of the summary statements, the fiscal notes, or the fiscal note summaries, section 116.190 provides that such a challenge cannot be brought until after the Secretary certifies the official ballot title, which the Secretary cannot do until the Attorney General fulfills his duty under section 116.175.4.

To break this impasse, Fitz-James filed a petition in the Cole County circuit court on May 4 seeking a writ of mandamus to compel the Attorney General to perform his duty under section 116.175.4 or for a declaratory judgment that the ballot title provisions in chapter 116 are unconstitutional on their face or as applied.

On May 17, the circuit court entered preliminary writs directing the Attorney General, the Secretary, and the Auditor to file responsive pleadings to Fitz-James's petition for mandamus.[5]  After briefing and argument, the circuit court entered judgment making the writ of mandamus permanent against the Attorney General and ordering him

---

[4]  In *No Bans on Choice v. Ashcroft*, 638 S.W.3d 484, 492 (Mo. banc 2022), this Court held sections "116.180 and 116.334.2's prohibition on collecting referendum petition signatures prior to the Secretary's certification of the official ballot title 'interferes with and impedes' the constitutional right of referendum reserved to the people by unreasonably shortening the timeframe for petition circulation."  Fitz-James has not asked this Court to extend this holding from referendum petitions to initiative petitions in this case, and the Court expresses no view on that question.

[5]  On May 31, the Secretary filed a motion to quash the circuit court's preliminary writ and dismiss Fitz-James's claims against him.  The Secretary argued his duties under section 116.180 had not been triggered because he had not yet received a fiscal note with an approved fiscal note summary for inclusion in the ballot title for each of the proposed initiatives.  The circuit court sustained the Secretary's motion and dismissed him from the action.

to approve the Auditor's fiscal note summaries and notify the Auditor of that approval. The Attorney General timely appealed the circuit court's judgment to this Court.

**Standard of Review**

In a bench-tried case, this Court "must sustain the decree or judgment of the [circuit] court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *BG Olive & Graeser, LLC v. City of Creve Coeur*, 658 S.W.3d 44, 46 (Mo. banc 2022) (alteration in the original) (internal quotation marks omitted). "Questions of law, including matters of statutory interpretation, are reviewed *de novo*." *Id.* (internal quotation marks omitted).

"The goal of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue." *Mo. State Conf. of NAACP v. State*, 607 S.W.3d 728, 732 (Mo. banc 2020) (internal quotation marks omitted). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used and to give effect to that intent if possible." *Id.* (alterations and internal quotation marks omitted). "This Court does so by considering the words used in their plain and ordinary meaning." *Id.* (alterations and internal quotation marks omitted). Additionally, this Court has held that the "construction of a statutory scheme should avoid unreasonable or absurd results." *MacColl v. Mo. State Highway Patrol*, 665 S.W.3d 290, 297 (Mo. banc 2023) (internal quotation marks omitted).

7

**Analysis**

This case is not about the substance of Fitz-James's proposed initiatives petitions, nor is it about the fiscal impact of those proposals. Rather, this case is about which state official is authorized to estimate and summarize that fiscal impact. Section 116.175 unequivocally answers this question. It is the Auditor, and not the Attorney General, who bears this responsibility. The Attorney General's narrow authority to approve the "legal content and form" of the fiscal note summaries cannot be used as a means of usurping the Auditor's broader authority to assess the fiscal impact of the proposals and report that impact in a fiscal note and fiscal note summary.

Chapter 116 sets out the procedures for approving an initiative petition for circulation. First, the proponent submits a sample petition sheet to the Secretary. §116.332.1. The Secretary makes a determination as to whether the sample sheet is in the proper form. § 116.332.4. The Attorney General may offer his views, *see* § 116.332.3, but the Secretary makes the determination. If the proposed petition is in proper form, the Secretary oversees the creation of the official ballot title, which must be included on each page of the petition. §§ 116.180, 116.334. This ballot title is comprised of the summary statement and the fiscal note summary. § 116.180. The Secretary drafts the summary statement, § 116.334, and the Auditor drafts the fiscal note summary, § 116.175. Both are sent to the Attorney General for his review of the "legal content and form." *See* § 116.175.4 ("The attorney general shall, within ten days of receipt of the fiscal note and the fiscal note summary, approve the legal content and form of the fiscal note summary prepared by the state auditor and shall forward notice of such approval to the state

8

auditor."); § 116.334.1 ("The attorney general shall within ten days approve the legal content and form of the proposed [summary] statement.").

At issue in this case is section 116.175 and the division of responsibility it establishes between the Auditor and the Attorney General. It states, in its entirety:

1. Except as provided in section 116.155, upon receipt from the secretary of state's office of any petition sample sheet, joint resolution or bill, *the auditor shall assess the fiscal impact of the proposed measure*. The state auditor may consult with the state departments, local government entities, the general assembly and others with knowledge pertinent to the cost of the proposal. Proponents or opponents of any proposed measure may submit to the state auditor a proposed statement of fiscal impact estimating the cost of the proposal in a manner consistent with the standards of the governmental accounting standards board and section 23.140, provided that all such proposals are received by the state auditor within ten days of his or her receipt of the proposed measure from the secretary of state.

2. Within twenty days of receipt of a petition sample sheet, joint resolution or bill from the secretary of state, *the state auditor shall prepare a fiscal note and a fiscal note summary for the proposed measure and forward both to the attorney general*.

3. The fiscal note and fiscal note summary *shall state the measure's estimated cost or savings*, if any, to state or local governmental entities. The fiscal note *summary shall contain no more than fifty words*, excluding articles, which shall *summarize the fiscal note in language neither argumentative nor likely to create prejudice* either for or against the proposed measure.

4. The *attorney general shall, within ten days of receipt of the fiscal note and the fiscal note summary, approve the legal content and form of the fiscal note summary prepared by the state auditor* and shall forward notice of such approval to the state auditor.

5. If the attorney general or the circuit court of Cole County determines that the fiscal note or the fiscal note summary does not satisfy the requirements of this section, the fiscal note and the fiscal note summary shall be returned to the auditor for revision. A fiscal note or fiscal note summary that does not satisfy the requirements of this section also shall not satisfy the requirements of section 116.180.

§ 116.175 (emphasis added).

9

The first subsection of this statute plainly and unequivocally assigns to the Auditor – not the Attorney General – the task of assessing the fiscal impact of the proposed measure. The remainder of subsection 1 identifies the sources the Auditor may draw upon and permits proponents and opponents of the measure to submit their views regarding the measure's fiscal impact. Subsection 2 requires the Auditor to present his assessment in the form of a fiscal note and a summary of that fiscal note and send both documents to the Attorney General so he can review their "legal content and form."

Subsection 3 sets out the only "legal content and form requirements" for fiscal notes and fiscal note summaries, i.e., (1) that both "shall state the measure's estimated cost or savings, if any, to state or local governmental entities," (2) that the summary shall contain no more than 50 words, excluding articles, and (3) that the summary "shall summarize the fiscal note in language neither argumentative nor likely to create prejudice either for or against the proposed measure." § 116.175.3.

Subsection 4 lies at the heart of this case. It provides that the Attorney General "shall, within ten days of receipt of the fiscal note and the fiscal note summary, approve the legal content and form of the fiscal note summary prepared by the state auditor[.]" This subsection does not require, or even authorize, the Attorney General to approve the "legal content and form" of the fiscal *note*, only the fiscal note *summary*. And, as noted above, subsection 3 sets out the only "legal content and form" requirements with which the Attorney General is to concern himself. Here, the Attorney General fails to show the Auditor's fiscal note summaries do not comply with any of the "legal content and form"

10

requirements in subsection 3, and the circuit court correctly found those requirements were met.

The Attorney General first argues the "legal content" of the fiscal notes is deficient because they rely on a small pool of inadequate responses from local and state entities that underestimate the cost of the proposed measures. This argument concerns only the fiscal note, however, and nothing in section 116.175.4 requires the Attorney General to approve the "legal content and form" of the fiscal notes. It requires him to approve only the "legal content and form" of the fiscal note summaries.

Even if the Attorney General were authorized to approve the "legal content and form" of the fiscal notes, his argument extends well beyond the "legal content and form" requirements set out in section 116.175.3. The Attorney General challenges, instead, the *substance* of the fiscal notes, i.e., the assessment of the proposal's cost or savings, if any, to state or local governmental entities. But section 116.175.1 makes clear that the substantive responsibility for assessing the fiscal impact of a measure belongs solely to the Auditor, and only the "legal content and form" of that assessment are to be reviewed by the Attorney General.

The Attorney General, nevertheless, characterizes his claim as challenging the "legal content and form" of the fiscal notes and their summaries because he contends they use language that is argumentative or likely to prejudice readers in favor of the proposed measure. This characterization is misleading. The Attorney General nowhere identifies any of the Auditor's language the Attorney General claims is argumentative or prejudicial. Instead, he claims the content of the notes is likely to prejudice voters in

11

favor of the proposals by underestimating the fiscal impact. And, because he believes the fiscal notes understate the costs to state and local governments, the Attorney General claims the summaries inevitably do so as well. The Attorney General has no authority under section 116.175 to refuse to approve fiscal note summaries on such grounds.

The prohibition in section 116.175.3 against using language that is argumentative or likely to create bias for or against the measure applies only to the fiscal note summary. It does not apply to the fiscal note itself any more than the 50-word limit does. The only "legal content and form" requirement in section 116.175.3 that applies to the fiscal notes themselves is the requirement that both the fiscal notes and the summaries must "state the measure's *estimated* cost or savings[.]" § 116.175.3 (emphasis added). The "estimate" referred to in this provision, however, is the Auditor's estimate, *see* § 116.175.1, *not* the Attorney General's. As a result, so long as the fiscal notes and summaries reflect the Auditor's assessment of the measure's estimated cost or savings – and nothing else – this "legal content and form" requirement is satisfied, and the Attorney General has no basis to object. Instead, he must proceed to ensure the other two "legal content and form" requirements in section 116.175.3 are satisfied, i.e., that the summaries comply with the word limit and that the summaries summarize the fiscal note – whatever it says – using language that is neither argumentative nor likely to create bias. If these requirements are met, the Attorney General "shall" notify the Auditor that he approves the "legal content and form" of the fiscal note summaries under section 116.175.4.

Here, the Attorney General does not claim that the fiscal notes or the summaries fail to address the Auditor's estimate of the proposals' cost or savings, or that they also

12

address other topics. The Attorney General does not claim the summaries exceed the 50-word limit. And, finally, the Attorney General does not claim that the summaries do not summarize the fiscal notes or point to any language in the summaries that is argumentative or prejudicial. Accordingly, the circuit court did not err in holding the Attorney General had only a ministerial duty to approve the "legal content and form" of the fiscal note summaries and convey that approval to the Auditor.[6]

---

[6] The Attorney General bases his refusal to approve the fiscal note summaries on his contentions, among others, that the Auditor: (1) did not seek or receive an adequate number or quality of responses from state and local governmental entities before creating the fiscal note; (2) should have concluded the proposals would result in a large loss of federal funds and included that cost in the Auditor's estimate; and (3) should have extended the methodology Greene County used in its response to calculate the proposal's cost statewide. These challenges have nothing to do with "legal form and content." Instead, they are attempts by the Attorney General to substitute his judgment for the Auditor's about matters regarding which the General Assembly has chosen to vest authority with the Auditor. This Court has held section 116.175 vests great discretion in the Auditor, both as to what information to solicit as well as whether and to what extent to rely on whatever information is received. *See Brown v. Carnahan*, 370 S.W.3d 637, 667 (Mo. banc 2012) (finding the Auditor, in preparing a fiscal note and fiscal note summary, is not required to conduct independent research regarding the fiscal impact of a proposal or "double-check[] economic theories and assumptions" included in any submission, and "is not required to compel and second-guess reasonable submissions from entities but is able to rely on the responses submitted"). Similarly, the Attorney General cannot convert his claim that the summary should be written to recite the opponents' estimates, which did not persuade the Auditor, verbatim rather than generally into a claim that the language of the summary is argumentative or intended to bias the reader. *See Mo. Municipal League v. Carnahan*, 303 S.W.3d 573, 583 (Mo. App. 2010) (noting "[a]ll of the details of a fiscal note need not be set out in a summary consisting of a mere fifty words" to comply with the requirements of section 116.175); *see also Protect Consumers' Access to Quality Home Care Coal., LLC v. Kander*, 488 S.W.3d 665, 674 (Mo. App. 2015) (noting the Auditor has discretion in how to summarize opponents' submissions in a fiscal note summary). Rather than impeding the ballot title certification process with challenges that have nothing to do with "legal content and form," the Attorney General's complaints are more properly raised in an action to challenge the ballot title after it is certified. *See* § 116.190.3 ("[T]he petition shall state the reasons

13

The Attorney General also claims that, whenever (and for whatever reasons) he rejects and returns to the Auditor a fiscal note or fiscal note summary, the Auditor has no alternative under section 116.175.5 but to modify the note and summary and resubmit them to the Attorney General. This argument misreads section 116.175.5 and stands the entire statute on its head. The Attorney General construes section 116.175.5 as a grant of oversight to him over and above the authority given him under section 116.175.4. This is incorrect. Subsection 5 does not state that, whenever the Attorney General determines a fiscal note or summary does not satisfy any requirement anywhere throughout section 116.175, the Attorney General can return the note or summary to the Auditor and thereby compel revisions.

Instead, subsection 5 states the Auditor can be compelled to make revisions whenever the Attorney General *or the circuit court of Cole County* makes such a determination. § 116.175.5. As explained above, however, the only requirements in section 116.175 that the Attorney General is authorized to enforce are the three "legal content and form" requirements in subsection 3. Under section 116.190, however, the circuit court can do what the Attorney General cannot, i.e., review the *substance* of the fiscal note and the fiscal note summary to determine if either or both of them are insufficient or unfair. If either the Attorney General (performing his "legal form and

___

why the fiscal note or the fiscal note summary portion of the official ballot title is *insufficient or unfair* and shall *request a different fiscal note* or fiscal note summary portion of the official ballot title") (emphasis added)). Of course, the Attorney General cannot bring such a challenge in his official capacity, *see* § 116.190.1 (providing ballot title challenges may be brought by "[a]ny citizen"), but nothing prevents him from doing so in his individual capacity.

14

content" review) or the circuit court (performing its substantive review for fairness and sufficiency) determines a fiscal note or summary fails to comply with section 116.175, subsection 5 merely provides that the note and summary should be returned to the Auditor for revisions rather than the court or Attorney General attempting to make the revisions themselves. As explained above, because the Attorney General had no basis to challenge the "legal content and form" of these fiscal notes or summaries, he had no legitimate basis on which to trigger section 116.175.5.[7]

Finally, the Attorney General argues the circuit court erred because mandamus was not an appropriate remedy. He argues mandamus was inappropriate because Fitz-James had adequate remedies at law and because the Attorney General's duties under section 116.175 are not ministerial. Both of these arguments fail.

The Attorney General first argues mandamus was inappropriate because Fitz-James also sought a declaratory judgment in her petition in the circuit court. The Attorney General points to this Court's statement in *State ex rel. Kelley v. Mitchell* that "mandamus does not issue where there is another adequate remedy available to relator," and argues that Fitz-James's prayer for a declaratory judgment is such an adequate remedy. 595 S.W.2d 261, 265 (Mo. banc 1980). But the Attorney General pulls that statement out of context. In *Kelley*, the relators first sought a declaratory judgment that a

---

[7] Because this Court holds the Attorney General had no legitimate basis to challenge the "legal content and form" of the fiscal notes or summaries and, therefore, no basis to invoke section 116.175.5, this necessarily disposes of the Attorney General's claim that this matter is not ripe unless and until the Auditor revises the fiscal notes and summaries to the Attorney General's satisfaction under section 116.175.5.

15

salary increase for the board of election commissioners ran afoul of section 115.049.3, RSMo 1978. *Id.* at 263. The next day, the relators in *Kelley* filed a petition for a writ of mandamus. *Id.* In holding mandamus relief was not appropriate in that case, this Court noted there was "no reason to doubt that the relators would be able to receive full, prompt and adequate relief in the declaratory judgment action." *Id.* at 267. This Court has since distinguished *Kelley*, however, and said "mandamus is an appropriate remedy when alternative remedies waste judicial resources or result in a burdensome delay, creating irreparable harm to the parties." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 806 (Mo. banc 2015).

Here, even though Fitz-James asked for the circuit court to issue a declaratory judgment in her petition as an alternative to a writ of mandamus in Count I of her petition, a declaratory judgment would not have afforded her full, prompt, and adequate relief. The additional delay in establishing, and then likely having to enforce, a declaratory judgment would be burdensome and result in further harm to Fitz-James. Until the official ballot title is certified – a critical step being held up solely by the Attorney General's unjustified refusal to act – Fitz-James cannot challenge that title in circuit court or circulate her petitions. Fitz-James's constitutional right of initiative petition is being obstructed, and the deadline for submitting signed petitions draws nearer every day. Accordingly, mandamus is an appropriate remedy to prevent further harm to Fitz-James.

The Attorney General also is incorrect in asserting mandamus is inappropriate because his duties under section 116.175 are not ministerial. A writ of mandamus will

16

issue "when there is an unequivocal showing that [a] public official failed to perform a ministerial duty imposed by law." *Curtis v. Mo. Democratic Party*, 548 S.W.3d 909, 916 (Mo. banc 2018) (emphasis and internal quotation marks omitted). This Court has often said a ministerial duty is "a duty of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (emphasis and internal quotation marks omitted); *see also State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. banc 2019) (noting this definition of a ministerial act has been embraced by this Court for over 100 years).

As discussed above, section 116.175.4 requires the Attorney General to approve the Auditor's fiscal notes summaries unless they violate one of the three "legal content and form" requirements in section 116.175.3. The statute is clear: if the summaries satisfy those requirements, the Attorney General "***shall*** forward notice of such approval to the" Auditor. § 116.175.4 (emphasis added). In other words, when presented with a fiscal note summary that satisfies the requirements of section 116.175.3, the Attorney General has no discretion. He must approve the summary and notify the Auditor he has done so. At this point, under section 116.175.4, the Attorney General has "a duty of a clerical nature … upon a given state of facts, in a prescribed manner, in obedience to the

17

mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Curtis*, 548 S.W.3d at 916.[8]

As explained above, the circuit court did not err in finding the fiscal notes and fiscal note summaries for Fitz-James's proposed petitions complied with the "legal content and form" requirements in section 116.175.3. Indeed, the Attorney General makes no colorable argument that they do not comply. Accordingly, the Attorney General has a clear, ministerial duty to approve the summaries and notify the Auditor of that approval. His refusal to comply with section 116.175.4's command to perform this ministerial act is precisely the type of failure for which mandamus is appropriate.[9] *See Gould v. Mo. State Bd. of Registration for the Healing Arts*, 841 S.W.2d 288, 290 (Mo. App. 1992) (noting mandamus is "an extraordinary remedy effective to compel

---

[8] Just because the Attorney General's duties pursuant section 116.175 are ministerial does not mean they are unimportant or insignificant, as the Attorney General suggests. Indeed, as both the circuit court and Attorney General noted, the General Assembly has expressly acknowledged that executive branch officials occasionally make mistakes. A fiscal note or summary that does not comply with the three "legal content and form" requirements in section 116.175.3 would provide no basis for the already precarious business of mandating that an official ballot title of up to 150 words of the government's choosing be printed on every petition sheet and, potentially, every ballot. The Attorney General's review for "legal content and form" is an important safeguard created by the General Assembly to avoid such occurrences.

[9] This holding does not conflict with this Court's opinion in *Forester v. May*, No. SC99928, __ S.W.3d __ (Mo. banc July 20, 2023). In *Forester*, the operative statute provided a Children's Division caseworker with "room ... for variation in when and how" the caseworker responded to a report of child abuse. *Id.* at *8-9. Here, the Attorney General is authorized only to determine whether the requirements of section 116.175.3 are satisfied; therefore, the Attorney General's refusal to approve the fiscal note summary was not an exercise of discretion. When the fiscal note summary satisfies the requirements of section 116.175.3, the Attorney General has a purely clerical and ministerial duty to approve the summary and notify the Auditor of such approval.

performance of a particular act by one who has an unequivocal duty to perform the act").

Therefore, the circuit court did not err in making permanent its writ of mandamus compelling the Attorney General to approve the fiscal note summaries and provide notice of that approval to the Auditor.

## Conclusion

This Court has often repeated the importance of the right to initiative enshrined in the Missouri Constitution:

> Nothing in our constitution so closely models participatory democracy in its pure form. Through the initiative process, those who have no access to or influence with elected representatives may take their cause directly to the people. The people, from who all constitutional authority is derived, have reserved the "power to propose and enact or reject laws and amendments to the Constitution."

*Brown*, 370 S.W.3d at 645 (quoting *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990)). For more than 40 years, this Court has noted "that procedures designed to effectuate [the rights of initiative and referendum] should be liberally construed to avail voters with every opportunity to exercise these rights" and that "[t]he ability of voters to get before their fellow voters issues they deem significant should not be thwarted in preference for technical formalities." *United Lab Comm. of Mo. v. Kirkpatrick*, 572 S.W.2d 449, 454 (Mo. banc 1978). If technical formalities cannot stand in the way, a failure to perform a clear and unequivocal duty must not be allowed to do so either. If the Attorney General had complied with his duty to approve the Auditor's fiscal note summaries in the time prescribed by section

19

116.175.4, the Secretary would have certified the official ballot titles for Fitz-James's initiative petitions nearly 100 days ago.

For the reasons set for above, the circuit court's judgment is affirmed.[10]

_____
Paul C. Wilson, Judge

Russell, C.J., Powell, Breckenridge,
Fischer, and Ransom, JJ. concur;
Draper, J., not participating.

_____

[10] No post-opinion motions will be entertained in this case, and the Attorney General is ordered forthwith to comply with circuit court's permanent writ of mandamus in accordance with the terms and deadlines set forth therein.